Job Olcott *et al.*, plaintiffs in error, *v.* The State of Illinois, defendant in error.

*Error to Lee.*

Words, figures and abbreviations may be used to designate lands against which a judgment is asked for the taxes, &c. due thereon, but the description must be so certain that a definite locality can be given them.

A judgment against lands for taxes is not to be regarded as a unit, but as a several judgment against each particular tract of land ordered to be sold. The judgment is not *in personam* against the owners, for the satisfaction of which they are jointly liable, but merely a condemnation of each tract of land for the non-payment of the taxes due upon it. It may be valid as to a part of the lands returned by the Collector, and erroneous as to the rest.

In cases of writs of error to judgments of the Circuit Courts directing a sale of lands for the non-payment of taxes, the Supreme Court will only inquire into the regularity and validity of so much of the proceedings as relates to the lands of the parties before the Court.

Any number of persons interested in lands condemned by a judgment for taxes may join in a writ of error for its reversal, and if the judgment is valid as to part of the plaintiffs in error and erroneous as to the rest, it may be affirmed in part and reversed in part.

All persons uniting in a writ of error to reverse a judgment against lands for taxes will be liable for the costs accruing thereon.

Suit for taxes, in the Lee Circuit Court, at the April term, 1848, Hon. Thomas C. Browne presiding.

A list of the lands against which taxes had been assessed and which were due and unpaid, and the printer's certificate of publication of the notice of the intended application for a judgment having been filed, *Stillman,* Circuit Attorney, entered a motion for judgment. *Heaton & Noble* appeared for the owners of the lands described in the list as being the Ogee Reserve Section, and resisted the motion so far as those lands were concerned, but their objections were overruled by the Court, to which decision they excepted. Judgment was then entered in the usual form in such cases.

The owners of the Ogee Reserve Section in their individual names, and of the Le Clere Reserve Section joined in a writ of error to reverse this judgment.

The list exhibited in the record, embraced, among other lands, the following:

Olcott *et al. v.* The State.

| Names of Present Owners. | In whose name Patented. | Costs. | Year for which Tax is due. | Valuation. | Amount of Tax. | DESCRIPTION. | Interest. | County. |
|---|---|---|---|---|---|---|---|---|
| | | | | $ | $ cts | | | Lee. |
| LeClere Pierre | | 12 | 1847 | 2575 | 33·99 | on LeClere Reserve Section, Town 37 North, Range [2 E.] | | " |
| Olcott Job | | 12 | 1846 | 3000 | 54·00 | Ogee Reserve Section, E½ town 37 N., R. 2 E. | 5·40 | " |
| same | | 12 | 1845 | 3000 | 34·62 | same | 3·46 | " |
| same | | 12 | 1844 | 3000 | 57·12 | same | 5·71 | " |
| same | | 12 | 1843 | 3000 | 60·08 | same | 6·01 | " |
| same | | 12 | 1842 | 3000 | 24·18 | same | 2·42 | " |
| same | | 12 | 1841 | 3000 | 31·20 | same | 3·12 | " |
| same | | 12 | 1840 | 3000 | 28·56 | same | 2·88 | " |
| Robinson William H. | | 12 | 1846 | 730 | 11·69 | Ogee Reserve Section, W½ T. 37 N., R. 2 E. | 1·17 | " |
| same | | 12 | 1845 | 730 | 6·96 | same | ·69 | " |
| same | | 12 | 1844 | 730 | 13·90 | same | 1·39 | " |
| same | | 12 | 1843 | 730 | 14·64 | same | 1·46 | " |
| same | | 12 | 1842 | 730 | 5·84 | same | ·58 | " |
| same | | 12 | 1841 | 730 | 6·59 | same | ·66 | " |
| same | | 12 | 1840 | 730 | 6·94 | same | ·69 | " |
| Hastings Willard | | 12 | 1846 | 225 | 3·60 | Ogee Reserve Section, W½ T 37 N., R. 2 E. | ·36 | " |
| same | | 12 | 1845 | 225 | 2·14 | same | ·21 | " |
| same | | 12 | 1844 | 225 | 4·28 | same | ·43 | " |
| same | | 12 | 1843 | 225 | 4·51 | same | ·45 | " |
| same | | 12 | 1842 | 225 | 1·81 | same | ·18 | " |

Olcott *et al. v.* The State.

| Names of Present Owners. | In whose name Patented | Costs. | Year for which Tax is due. | Valuation. | Amount of Tax. | DESCRIPTION. | Interest. | County. |
|---|---|---|---|---|---|---|---|---|
| | | | | $ | $ cts | | cts | |
| Hastings Willard.. | .... | 12 | 1841 | 225 | 2.04 | Ogee Reserve Section W½ T. 37 N. R. 2 E. | .20 | Lee. |
| same.. | .. | 12 | 1840 | 225 | 2.14 | same | .20 | » |
| Town Russell.. | .. | 12 | 1846 | 225 | 4.59 | Ogee Reserve Section W½ T. 37 N. R. 2 E. | .46 | » |
| same | | 12 | 1845 | 225 | 2.94 | same | .29 | » |
| same | | 12 | 1844 | 225 | 4.88 | same | .49 | » |
| same | | 12 | 1843 | 225 | 5.14 | same | .51 | » |
| same | | 12 | 1842 | 225 | 2.05 | same | .21 | » |
| same | | 12 | 1841 | 225 | 2.55 | same | .25 | » |
| same | | 12 | 1840 | 225 | 2.42 | same | .24 | » |
| Town George.. | | 12 | 1846 | 1550 | 27.91 | Ogee Reserve Section T. 37 N. R. 2 E. | 2.79 | » |
| same | | 12 | 1845 | 1550 | 17.89 | same | 1.79 | » |
| same | | 12 | 1844 | 1550 | 29.51 | same | 2.95 | » |
| same | | 12 | 1843 | 1550 | 31.09 | same | 3.11 | » |
| same | | 12 | 1842 | 1350 | 12.49 | same | 1.25 | » |
| same | | 12 | 1841 | 1550 | 16.11 | same | 1.61 | » |
| same | | 12 | 1840 | 1550 | 14.75 | same | 1.47 | » |
| Epley Jacob.. | | 12 | 1846 | 50 | .90 | same | 9 | » |
| same.. | | 12 | 1845 | 50 | .58 | same | 6 | » |
| same.. | | 12 | 1844 | 50 | .95 | same | 9 | » |
| same.. | | 12 | 1843 | 50 | 1.01 | same | 10 | » |

Olcott *et al. v.* The State.

| Names of Present Owners. | In whose name Patented | Costs. | Year for which Tax is due. | Valuation. | Amount of Tax. | DESCRIPTION. | Interest. | County |
|---|---|---|---|---|---|---|---|---|
| Epley Jacob | | 12 | 1842 | $ 50 | $ cts. .40 | Ogee Reserve Section T. 37 N., R. 2 E. | 4 | Lee |
| same | | 12 | 1841 | 50 | .51 | same | 5 | ,, |
| same | | 12 | 1840 | 50 | .48 | same | 5 | ,, |
| Harrington Amasa | | 12 | 1846 | 50 | .90 | Ogee Reserve Section T. 37 N. R. 2 E. | 9 | ,, |
| same | | 12 | 1845 | 50 | .58 | same | 6 | ,, |
| same | | 12 | 1844 | 50 | .95 | same | 9 | ,, |
| same | | 12 | 1843 | 50 | 1.01 | same | 10 | ,, |
| same | | 12 | 1842 | 50 | .40 | same | 4 | ,, |
| same | | 12 | 1841 | 50 | .51 | same | 5 | ,, |
| same | | 12 | 1840 | 50 | .90 | same | 9 | ,, |
| Town Hosea | | 12 | 1846 | 50 | .90 | Ogee Reserve Section T. 37 N. R. 2 E. | 9 | ,, |
| same | | 12 | 1845 | 50 | .58 | same | 6 | ,, |
| same | | 12 | 1844 | 50 | .95 | same | 9 | ,, |
| same | | 12 | 1843 | 50 | 1.01 | same | 10 | ,, |
| same | | 12 | 1842 | 50 | .40 | same | 4 | ,, |
| Hosea Town | | 12 | 1841 | 50 | .51 | same | 5 | ,, |
| same | | 12 | 1840 | 50 | .48 | same | 5 | ,, |
| Sprague Josiah | | 12 | 1846 | 250 | 4.47 | same | 45 | ,, |
| same | | 12 | 1845 | 250 | 2.88 | same | 29 | ,, |
| same | | 12 | 1844 | 250 | 4.76 | same | 47 | ,, |

Olcott *et al. v.* The State.

| County | Interest | DESCRIPTION | Amount of Tax | Valuation | Year for which Tax is due. | Costs | In whose name Patented | Names of Present Owners. |
|---|---|---|---|---|---|---|---|---|
| Lee. | 50 | Ogee Reserve Section T. 37 N. R. 2 E. | $ cts. 5·01 | $ 250 | 1843 | 12 | | same |
| " | 20 | same | 2·01 | 250 | 1842 | 12 | | same |
| " | 26 | same | 2·59 | 250 | 1841 | 12 | | same |
| " | 22 | same | 2·24 | 250 | 1840 | 12 | | same |
| " | 13 | Ogee Reserve Section W½ T. 37 N. R. 2 E. | 1·29 | 72 | 1846 | 12 | | same |
| " | 8 | same | ·83 | 72 | 1845 | 12 | | same |
| " | 14 | same | 1·37 | 72 | 1844 | 12 | | same |
| " | 14 | same | 1·44 | 72 | 1843 | 12 | | same |
| " | 6 | same | ·58 | 72 | 1842 | 12 | | same |
| " | 8 | same | ·75 | 72 | 1841 | 12 | | same |
| " | 7 | same | ·68 | 72 | 1840 | 12 | | same |
| " | 8·18 | Le Clere Reserve Section T. 37 N. R. 2 E. | 81·80 | 4545 | 1846 | 12 | | Le Clere Pierre |
| " | 5·24 | same | 52·44 | " | 1845 | 12 | | same |
| " | 8·53 | same | 85·31 | " | 1844 | 12 | | same |
| " | 9·00 | same | 89·98 | " | 1843 | 12 | | same |
| " | 3·66 | same | 36·63 | " | 1842 | 12 | | same |
| " | 4·72 | same | 47·26 | " | 1841 | 12 | | same |
| " | 4·33 | same | 43·27 | " | 1840 | 12 | | same |

The following errors were assigned:

1. The Court erred in rendering judgment against the Ogee Reserve Section, and against the Pierre Le Clere Reserve Section, because the description in said list is uncertain and defective.

2. The Court erred in rendering judgment for the taxes and costs for the years 1841, 1842, 1843, 1844.

3. The Court erred in rendering the judgment aforesaid, because no notice had been given of the application for such judgment.

4. That no suit for taxes was docketed, as required by the statute.

5. The Court erred in overruling the objections made to the Ogee Reserve Section, in township thirty seven north, range two east.

6. The Court erred in rendering the judgment aforesaid in manner and form aforesaid.

*J. O. Glover & B. C. Cook,* for the plaintiffs in error.

In summary proceedings under a statute, its provisions must be strictly complied with. *Day* v. *Cushman,* 1 Scam. 476; *Smith* v. *Hileman,* ib. 325.

The return of the officer does not show that these lands were omitted to be assessed for the prior years, but, on the contrary, it does show that they were assessed for those years.

The suit was not properly docketed in the name of *The State of Illinois* v. *Samuel Bowman et al.* Rev. Stat. 445, § 57.

Courts will not give the law a retrospective operation. *Garret* v. *Wiggins,* 1 Scam. 336; *Robinson* v. *Rowan,* 2 do. 563; *Bruce* v. *Schuyler,* 4 Gilm. 279.

The judgment is void for uncertainty in the description of the lands recited in it.

*O. Peters,* for the defendants in error.

1. As to the first error, that the lands were insufficiently described:

No mode of describing is required by statute. The 33d section of the Revenue Law of 1838–9 is re-enacted, (Rev. Stat. 446, § 62,) and it *authorizes* figures, &c. to be used in describing lands in advertisements and records for taxes, but does not require it. But any other description is sufficient. Such a description as would be good in an attachment or levy will answer here. *Atkins* v. *Hinman,* 2 Gilm. 451..

Land may be described by name, as Black Acre, White Acre, &c. So here, the description by a *name* and not by lines or dimensions—"the Ogee Reserve Section."

2. As to rendering judgment against the lands for the years 1841–42–43–44 :

Whether the twentieth section of the Revised Statutes (Rev. Stat. 440,) is to have a retro-active operation or not, it has no application to these cases. That Act only applies to cases where there has been no assessment of taxes.

Whether assessments were made upon these lands during these years does not appear from this record, except as it is to be inferred from the fact that the Circuit Court had jurisdiction of the subject matter and has rendered the judgment. To beget this jurisdiction, the return of the officer and the publication of notice to delinquents, is all that is required. *Taylor* v. *The People,* 2 Gilm. 350 ; *Atkins* v. *Hinman,* Ib. 446.

The judgment of a Court of general jurisdiction is presumed to be right, unless the contrary is made to appear affirmatively. *Graham* v. *Dixon,* 3 Scam. 115.

Nothing then appears on the record to show when the assessment was made. It is to be presumed to have been regularly made from year to year, and before the passage of the Act of 1842–3 for the previous years. Were it otherwise however, the language of the Act is broad enough to give it a retro-active operation.

3. As to there being no notice :

The notice conforms substantially to what is required by the statute. These suits are not to be defeated and the collection

of the revenue delayed on mere technicalities. *Atkins* v. *Hinman*, 2 Gilm. 446 ; *Bestor* v. *Powell*, Ibid. 119.

4. As to the objection that the suit was not properly docketed :

The case of *Atkins* v. *Hinman* settles this question. In that case the cause was not entitled of any parties, and yet it was held sufficient.

5. As to the fifth error assigned, no notice can now be taken of it. The bill of exceptions fails entirely to show what objections were made, or what proceedings were had in the Circuit Court. No particular error in law or fact is pointed out under this assignment, and the same may be properly said of the sixth assignment.

6. It has been suggested that there was error in the amount of the judgment for costs.

It is not made to appear by the record how the costs are made up. But the amount is in fact, no more than the statute allows.

Costs of trial might have been added. If so, then the error is in favor of the plaintiffs in error; they cannot assign it for error here.

It is a new question, but yet in analogy to other proceedings *in rem*, as in case of attachments, mechanics' lien, &c., where the owner resists the judgment, the property becomes liable for the costs, and it is to be added to the debt, or claim for which the judgment is rendered. And we contend that under this statute, when an owner appears and contests, if judgment is rendered against the land, the costs of the trial will be added to the judgment with the other costs, and the land be sold for the whole.

7. The owners of the land who entered their appearance in the Circuit Court, have waived the right of objecting to the sufficiency of the notice. The notice is merely for the purpose of compelling the appearance of the owner. If he appears without a regular notice, he waives all informalities. It is like appearances in attachments and other proceedings *in rem*, in this respect.

Olcott *et al. v.* The State.

8. But what seems to us as decisive of this suit is the improper joinder of parties in this writ of error. We insist that each tract of land is to be considered as a separate defendant, and the owner of each tract must sue out his own writ of error. We would not say that the owner of several tracts may not sue out his writ of error as to all. Perhaps the case of *Taylor* v. *The People* may be authority for this, but it would violate all our ideas of writs of error, to tolerate the practice, that different owners, holding by different tenures, insisting perhaps upon entirely different grounds of defence, should be allowed to join in a writ of error.

Though the statute prescribes the form of the judgment, which is to be general as to all the delinquent lands in the list, yet the effect is several, operating severally upon each tract. Besides, one owner may be quite willing to waive any error in the proceedings, so that the judgment may be good as to his lands until it is reversed—and yet, if this is to be treated as one general judgment for any error therein, one owner may reverse the judgment, so as to render the whole proceeding void as to all the lands. This result cannot be tolerated. The only way to avoid such a consequence is to adopt the rule that each owner must be put to his writ of error.

Nor does the defendant waive the right to make this objection by joining in error.

*N. H. Purple,* for the plaintiff in error, in conclusion.

The description of the lands is not sufficiently minute and specific. It is too general and uncertain.

Lands omitted to be assessed one year cannot be assessed in another. There is no authority for such a proceeding in the statute. The Legislature never intend that an Act shall operate retrospectively, unless there is an express declaration to that effect. The Act referred to to establish this right is prospective merely.

Counsel say that this Court will presume that the Circuit Court had jurisdiction. Jurisdiction in cases of this kind can only be obtained by the proper duties of the officers being performed. The appearance of the owners for the purpose

of objecting to the judgment is not a waiver of any irregularities.

This writ of error is prosecuted by several persons as plaintiffs, and this is objected to by the defendants in error. We can see no possible objection to proceeding in this manner. Cases of this character are not governed by the general rules of pleading.

The Opinion of the Court was delivered by

TREAT, C. J. There is a fatal objection to so much of the judgment as embraces the lands assessed to the plaintiffs in error. The judgment is void for uncertainty in the description of the lands in question. The description is so general and indefinite that the lands ordered to be sold could not be ascertained and located. Words, figures and abbreviations may be used to designate the lands, but the description must be so certain that a definite locality can be given them. It is true that the section, township, and range—and as to a part of the lands, the half section, are given; but what particular part of the section or half section was intended to be assessed and sold as the property of one of the plaintiffs, there are no means of ascertaining. It is evident that the assessment and judgment were not designed to embrace the whole section or half section, because the same general description is several times used in reference to each section and half section. In every instance, the same tract is apparently assessed to several of the plaintiffs in error, and the judgment seems to pursue the assessment. The fact probably is that the plaintiffs in error are severally the owners of distinct portions of the reservations, but the record fails wholly to show of what portion and to what extent.

The question arises whether the judgment must be wholly reversed, or only so far as it affects the rights of the plaintiffs in error. We do not regard the judgment as a unit, but as a several judgment against each particular tract of land ordered to be sold. The judgment is not *in personam*, against the owners, for the satisfaction of which they are jointly liable, but merely a condemnation of each tract of

Olcott *et al. v.* The State.

land for the non-payment of the taxes due upon it. The judgment may be valid as to part of the lands returned by the collector, and erroneous as to the rest. In this case, if the preliminary proceedings were regular, so as to vest the Court with jurisdiction, the judgment may be good as to the lands properly described, and void as to the lands of the plaintiffs in error, by reason of uncertainty in the description. In cases of writs of error to judgments of the Circuit Courts directing the sale of lands for the non-payment of taxes, this Court will only inquire into the regularity and validity of so much of the proceedings as relates to the lands of the parties before the Court.

The only difficulty in the case is whether persons, not jointly interested, may join in the prosecution of a writ of error. This is purely a matter of practice, not affecting the rights of the parties, or the merits of the case, and we feel authorized to adopt the rule that will operate most conveniently in practice. We see no impropriety in permitting any number of persons interested in lands condemned by the judgment to join in a writ of error for its reversal. No evil can grow out of such a practice. If the judgment is valid as to part of the plaintiffs in error, and erroneous as to the rest, it may be affirmed in part and reversed in part. All uniting in the writ of error will of course be liable for the costs accruing thereon. Great inconveniences would result from the adoption of a different rule. The owners of a large number of town lots or tracts of land would be compelled at an enormous expense to sue out as many writs of error, when in point of fact the whole matter could be the better settled in one proceeding. To hold that the present plaintiffs could not maintain this writ of error would involve the necessity of several distinct suits to test precisely the same question. The ordinary rules of practice do not seem to be strictly applicable or appropriate in this peculiar proceeding, so much unlike the common law actions.

We are not to be understood by this decision as sanctioning a departure by the State, in prosecuting a suit for taxes, from the ordinary mode of proceeding in other cases, except

where the Legislature has otherwise provided, but this decision is only intended to apply to the mode of bringing a case before this Court for decision.

So much of the judgment of the Circuit Court as relates to the lands assessed to the plaintiffs in error will be reversed.

*Judgment reversed.*