WILLIAM L. SMITH et al., Petitioners-Appellants, v. D. R. G., INC., Respondent-Appellee.

(No. 58171;

First District (2nd Division)—June 17, 1975.

William Cousins, Jr., of Chicago, for appellants.

Allan L. Blair and David R. Gray, both of Chicago, for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal presents an issue that requires us to decide whether notice of a tax-deed proceeding received by an owner-resident of real estate from his wife satisfies a statutory requirement that the notice be served on the owner personally. This question arises from a proceeding under section 72 of the Civil Practice Act brought by appellants William L. Smith and his wife, Betty L. Smith, to vacate an order that authorized issuance of a tax deed to appellee, D. R. G., Inc. The material facts are not in dispute.

## I.

On May 27, 1969, real estate improved by a single-family brick residence with an attached garage, owned and occupied by William L. Smith and Betty L. Smith, was sold to D. R. G., Inc., for $143.04, the principal, interest and costs in a tax foreclosure of one installment of special assessments on the property. The period of redemption was extended to December 27, 1971, but expired without redemption by the Smiths. On September 8, 1971, as authorized by the Revenue Act, DRG, as the tax purchaser, petitioned for a tax deed. Application to the court was made on January 6, 1972; and to it were attached two affidavits. One, executed by DRG's agent, a process server, stated that on September 13, 1971, he served a copy of the notice on William L. Smith by handing and leaving it with him personally. The other, executed by DRG's lawyer, stated that on September 13, 1971, he personally served William L. Smith and Betty L. Smith with notice which told them that the period of redemption was to expire on December 27, 1971, and that application for a deed would be made on January 6, 1972.

The Smiths did not appear at the January 6 hearing; and on January 19, 1972, the court heard a prove-up of DRG's claim that it had complied with all notice requirements of the Revenue Act. The evidence presented consisted of testimony by DRG's lawyer and two process servers, one of whom executed the affidavit concerning personal service of the notice on William L. Smith. Without saying that he was the server, the lawyer testified that personal service was made on the parties; and that an agent of DRG was going to testify "*  *  * as to the service, or, at least, as to some of them." As the last witness, the process server who had sworn to the personal service on Smith then testified that on September 13, 1971, he went to the Smith home, saw Betty L. Smith and asked her about her husband; that she said he was in the bathroom; that he gave Betty Smith two copies of the notice, one to give William Smith; and that he saw William Smith come out of the bathroom, take

the notice from his wife and look at it. From this testimony, the affidavits and exhibits, the trial court entered an order finding that all persons entitled to notice had been served in the manner required by the Revenue Act. Issuance of the tax deed to DRG was ordered.

A few days short of 5 months later, in fact, after the deed was recorded, William Smith and his wife filed a pleading designated "Petition and Complaint in Chancery Filed Under Section 72 of C.P.A. to Set Aside the Tax Deed." In it, after describing their interest in and DRG's activities concerning the subject real estate, they alleged that the affidavit of the process server saying he had personally served William Smith with the required notice by leaving a copy with him personally was false and fraudulent; that the process server's testimony at the prove-up of DRG's application for the deed showed that personal service of notice on William Smith as required by the Revenue Act was not made; that the process server's claim of giving the notice to Betty Smith, who in turn gave it to William Smith, was false and fraudulent; that William L. Smith was not at home when the process server visited there; that William Smith was not served with notice personally as required by section 263 of the Revenue Act; and that the tax deed was void because DRG as the tax purchaser had not complied with the notice requirements of the Act. The Smiths prayed, among other relief, that an order be entered vacating issuance of the tax deed and removing it as a cloud on the title to their real estate.

DRG moved to dismiss the petition. The motion was denied. Then, it filed an answer. Thereafter, the trial court heard a motion by the Smiths for a temporary injunction. This was also denied. A short time later, an order was entered in which the court found (1) that after September 24 and November 26, 1971, the Smiths obtained estimates of redemption which showed them the amounts of money needed to redeem their property from the tax sale; (2) that they had not established any ground entitling them to relief under section 72 of the Civil Practice Act; (3) that DRG did not commit any fraud in procuring the tax deed; (4) that William L. Smith was not personally served with notice by the process server on September 13, 1971; and (5) that, on the day in question, Smith received a copy of DRG's application for the tax deed, the notice being given to him by his wife, Betty Smith.

Accordingly, the court denied the petition. The issue presented is whether this denial was error. And in resolving it, we must determine whether the trial court had jurisdiction over William L. Smith when it ordered the tax deed conveying his interest in the subject real estate to DRG and whether there was compliance by appellants with the juris-

dictional prerequisites for their section 72 petition. Necessarily, this requires us to review the pertinent provisions of the Revenue Act and apply the principles of our law that govern jurisdiction of trial courts in cases like this one.

## II.

At the time the special assessment on the Smith real estate became delinquent, section 232 of the Revenue Act required that the county collector transcribe the tax judgment, sale, redemption and forfeiture record at least five days before application for judgment of sale was made. (Ill. Rev. Stat. 1969, ch. 120, § 713.) Section 225 provided that any time after the first day of September next, after all such delinquent general taxes on real estate have become due, or next after any taxes shall have been paid under protest in any year, the collector shall give notice, annually, by newspaper publication, of the intended application for judgment of sale of such delinquent real estate. (Ill. Rev. Stat. 1969, ch. 120, § 706.) Section 230 required that the collector send by mail, at least 5 days before application for judgment, a notice informing the owner of the application. (Ill. Rev. Stat. 1969, ch. 120, § 711.) Operating in tandem with section 225 was section 235a, which authorized advertisement of delinquent special assessments in the same manner as prescribed by section 225 for the sale of delinquent general taxes. Ill. Rev. Stat. 1969, ch. 120, § 716a.

It appears, therefore, that compliance by the county collector with the provisions of section 232 served as a declaration or complaint in the proceeding to obtain judgment for delinquent taxes; the notices required by section 225 and 230 serve as process. (*People ex rel. Brenza v. Anderson*, 411 Ill. 252, 103 N.E.2d 629; *People ex rel. Anderson v. Chicago & Eastern Illinois Ry. Co.*, 386 Ill. 239, 53 N.E.2d 921.) Compliance with both the provisions of the Revenue Act which mandate preparation of the record of tax-delinquent property and with those which require the giving of notice was essential to give the court jurisdiction of an application for judgment of sale by the county collector. *People ex rel. Thaxton v. Coal Belt Electric Ry. Co.*, 311 Ill. 29, 142 N.E. 495; *People ex rel. Ream v. Dragstran*, 100 Ill. 286.

With regard to the real estate here involved, judgment and order of sale were entered in May 1969, on application of the county collector. No one appealed that judgment. Accordingly, 30 days from its rendition, the judgment and order became immune from collateral attack, except in

two kinds of cases.[1] (*First Lien Co. v. Markle*, 31 Ill.2d 431, 202 N.E.2d 26; *La Salle National Bank v. Hoffman*, 1 Ill.App.3d 470, 274 N.E.2d 640.) Therefore, the judgment entered on application of the county collector conclusively determined that there was an assessment of the property, that the assessment was legal, that the assessment was correctly computed, and that the collector had the power to satisfy the assessment by public sale. (*First Lien Co. v. Markle*, 31 Ill.2d 431, 202 N.E.2d 26; *La Salle National Bank v. Hoffman*, 1 Ill.App.3d 470, 274 N.E.2d 640.) Neither the collector's application nor the judgment entered thereon, however, touched in any way on the ownership rights of parties interested in the subject real estate. For those interests to be reached, the Revenue Act and due process of law required that more be done. *Windsor v. McVeigh* (1876), 93 U.S. 274, 278-81, 23 L.Ed. 914; *Rabbit v. Frank C. Weber & Co.*, 297 Ill. 491, 496-97, 130 N.E. 787; compare *Pennoyer v. Neff* (1877), 95 U.S. 714, 24 L.Ed. 565.

■■ For this reason, the Revenue Act provided in section 235a that after judgment for sale is entered and the property is sold to the highest bidder for cash, the sale is to be confirmed by the court that entered the order. The purchaser is issued a certificate of purchase in the form governed by section 248.[2] (Ill. Rev. Stat. 1969, ch. 120, §§ 716a, 729.) Section 235a gave the tax purchaser, or his assignee, the right to file a petition for issuance of a tax deed 5 months prior to expiration of the 2-year period of redemption. (Ill. Rev. Rev. Stat. 1971, ch. 120, § 716a.) To qualify for the deed, the tax purchaser had to serve the notices provided in sections 263 and 266 of the Act. (Ill. Rev. Stat. 1971, ch. 120, §§ 744, 747.)[3] Although jurisdiction over the tax-delinquent real estate is in rem,

---

[1] Where the tax or special assessment had been paid or the real estate was exempt from general taxes or special assessments. (Ill. Rev. Stat. 1969, ch. 120, § 751.) This is to be distinguished from section 260, which, at the time, permitted a taxbuyer (certificate holder) to seek the declaration of a "sale of error" on any of four grounds: (1) the property was exempt; (2) the taxes were paid; (3) there was a double assessment; or (4) the description was void for uncertainty. Ill. Rev. Stat. 1969, ch. 120, § 741.

[2] The constitutionality of these provisions of the Revenue Act is now free from doubt. (See *Catoor v. Blair* (N.D. Ill. 1973), 358 F.Supp. 815; *Balthazar v. Mari Ltd.*, (N.D. Ill. 1969), 301 F.Supp. 103, aff'd, 396 U.S. 114, 24 L.Ed.2d 307, 90 S.Ct. 397.) And from a due process standpoint, it is important to notice that in upholding the constitutionality of the Revenue Act with regard to these sections, the court in *Balthazar* made specific reference to the fact that the tax purchaser does not acquire a deed at this stage of the proceedings against the land. 301 F.Supp. 103, 104.

[3] It should be noted that as a parallel to the record of delinquent property which serves as a complaint to obtain judgment for general taxes and assessments, the petition prepared by the holder of the certificate of purchase acts as a pleading which initiates the action to obtain a tax deed. It is with the filing of this petition that the certificate holder becomes a party of record in the tax-sale proceeding.

acquired by the trial court on proper application of the county collector, compliance with the constitutional requirement that occupants of real estate be served with personal notice before the period of redemption expires is an indispensable condition precedent to the right to make a tax deed. *Gaither v. Lager*, 2 Ill.2d 293, 118 N.E.2d 4; compare *In re Application of County Treasurer*, 16 Ill.App.3d 385, 306 N.E.2d 743.

## III.

■■ In approaching resolution of the question concerning the trial court's jurisdiction and those concerning the sufficiency of appellants' section 72 petition, we notice that when DRG purchased the Smith residence for the price of the delinquent special assessment, it acquired a species of personal property, a lien on the land. (*City of Chicago v. City Realty Exchange, Inc.*, 127 Ill.App.2d 185, 262 N.E.2d 230; 51 Am. Jur. 2d *Liens* §§ 2, 3 (1970).) The certificate, on the day it was acquired, vested DRG with a property right inchoate and subject to redemption. (See *In re Application of County Treasurer*, 14 Ill.App.3d 1062, 304 N.E.2d 9.) This right in the subject real estate was contractual and was protected by the constitutional guaranty against impairment of contract obligations from alteration in substance by subsequent legislation. (*Wood v. Lovett* (1941), 313 U.S. 362, 85 L.Ed. 1404, 61 S.Ct. 983, 72 Am. Jur. 2d *State and Local Taxation* § 968 (1974).) Therefore, DRG's rights in the certificate, as well as its obligations, were determined by the law in force on the date of its acquisition.

With this in mind, we observe that on the day of the sale, at the issuance of the certificate of purchase, section 263 of the Revenue Act provided that "[n]o purchaser or assignee of such purchaser of real estate sold for nonpayment of general taxes or special assignments, shall be entitled to a deed until * * * [s]uch purchaser or assignee shall serve, or cause to be served, notice of such purchase, no less than 3 months prior to the date when the time of redemption, or extended time of redemption as hereinafter provided shall expire * * * upon occupants or persons in actual possession of such real estate * * *." (Ill. Rev. Stat. 1969, ch. 120, § 744.) These statutory obligations, which DRG had to discharge, found their mandate in the constitutional provision which, as to the Smiths, guaranteed "* * * that occupants [of tax delinquent real estate] shall in all cases be served with personal notice before the time of redemption expires." (Ill. Const. (1870), art. 9, § 5.) However, by the time DRG filed its petition for the tax deed, the constitution adopted in 1970 provided that "* * * occupants [of tax delinquent realty] * * * shall be given reasonable notice of the sale and the date of expiration of the period of redemption as the General

Assembly provides by law." (Ill. Const. (1970), art. 9, § 8.) In 1971, the General Assembly amended section 263 to provide, with regard to occupants of tax delinquent real estate, that "* * * notice shall be served by the purchaser or assignee upon owners who reside on any part of the real estate sold by leaving a copy of the notice with such owners personally." (Ill. Rev. Stat. 1971, ch. 120, § 744.) Thus, between the date of the certificate of purchase and the date of the petition, the substantive law did not change. Therefore, in disposing of this appeal, we are to be guided by the long line of decisions in this State which comprise the controlling case law. Some of these hold that where the statute governing notice requires personal service, no tax deed is valid unless, before expiration of the period of redemption, personal notice has been served. (*Frew v. Taylor*, 106 Ill. 159; *Palmer v. Riddle*, 180 Ill. 461, 54 N.E. 227.) Others have settled that a tax purchaser must comply strictly with notice provisions of the Revenue Act before real estate is forfeited in a tax-deed proceeding. *Clark v. Zaleski*, 253 Ill. 63, 97 N.E. 272; *In re Application of County Collector*, 12 Ill.App.3d 12, 297 N.E.2d 213; *In re Application of County Treasurer of Du Page County*, 16 Ill.App.3d 385, 306 N.E.2d 743.

For example, in *Gage v. Waterman*, 121 Ill. 115, 13 N.E. 543, notice of a tax sale was served by handing a copy to an agent of the owner-occupant of the real estate. The affidavit which purported to prove service did not show the authority of the agent. The Illinois Supreme Court held that service on an agent, intended as service on the owner, did not comply with the statutory requirement that the owner-occupant be notified by personal service.

In *Gaither v. Lager*, 2 Ill.2d 293, 118 N.E.2d 4, an owner-occupant of real estate, delinquent for 19 years in paying taxes due on his property, was personally served with a notice which did not comply with the requirements of section 263 of the Revenue Act. Publication was also made which, in form and content, complied with all the substituted service provisions of the Act. The supreme court held that the tax purchaser's failure to comply with the Act by including all of the essential elements of notice prescribed by section 263 rendered his notice fatally defective and his tax deed void. (2 Ill.2d 293, 300.) Emphasizing the determinative nature of the content of the notice served, and the status of the individual entitled to a prescribed method of service, the court concluded that "[a]part from the circumstance that notice by publication was admittedly surplusage under the facts of this case, the direction of both the constitution and of section [263] is that 'occupants' of land sold for taxes shall be served with 'personal' notice." 2 Ill.2d 293, 303.

In *Schott v. Short*, 131 Ill.App.2d 854, 268 N.E.2d 712, the tax-deed petitioner's affidavit of service averred that he had served notice on both a husband and wife by handing them a copy of the notice and leaving it with them, personally. His testimony at the hearing on his petition for a tax deed, however, revealed that he had given the wife two copies of the tax-sale notices; and while talking to her, there was someone in the house he assumed was the husband, the wife having conferred with that person. Without finding compliance with notice provisions of the Act, the trial court entered an order directing issuance of the tax deed. Subsequently, a section 72 petition was filed to set it aside. In that collateral attack, the court initially denied the requested relief, but after a post-trial motion and hearing, the prayer was granted and the deed was set aside. On appeal, the Appellate Court, Third District, affirmed, stating that the testimony of the tax-deed petitioner clearly negated his affidavit that the husband had been personally served. 131 Ill.App.2d 854, at 860.

■■ In this case, the record of the tax-deed proceeding shows that, contrary to the affidavit of the process server and that of DRG's lawyer, service of the statutory notice was made by the process served by asking Betty Smith about her husband and handing her a copy of it for her to give to him.[4] It is not claimed by DRG that Smith could not be found or that he avoided service. This is not a case in which, without success, diligent efforts were made to find the person sought to be served. Being an occupant of the realty, a resident owner, the constitution in force when the certificate of purchase issued and the statute in being when the petition for deed was filed required that William L. Smith be notified of the proceedings by personal service of notice. (Ill. Const. (1870), art. 9, § 5; Ill. Rev. Stat. 1971, ch. 120, § 744.) A method of service prescribed by a statute must be followed; and, as a general rule, there must be strict compliance with its provisions, especially where the notice affects property rights or where it is to form the basis for a suit. (*Town of O'Fallon v. Ohio & Mississippi Ry. Co.*, 45 Ill.App. 572; 66 C.J.S. *Notice* § 18c (1950); compare *In re Sioux City Stock Yards Co.* (1936), 222 Iowa 323, 268 N.W. 18; *Cowl v. Wentz* (N.D. 1961), 107 N.W.2d 697; see *Stern-*

---

[4] It is provided in the Revenue Act that "* * * prior to the entry of an order directing the issuance of a tax deed, the petitioner shall furnish the court with a report of proceedings of the evidence received on the application for tax deed and such report of proceedings shall be filed and made a part of the court record." (Ill. Rev. Stat. 1971, ch. 120, § 747.) DRG complied with these provisions; therefore, at the time the tax deed issued, the record contained the testimony of the process server which clearly showed that he did not personally serve William L. Smith.

*beck v. Buck* (1957), 148 Cal. App. 2d 829, 307 P.2d 970.) Where a statute requires that notice be given in a certain way, any means or manner other than that prescribed is ineffective. (See *Yuma County v. Arizona Edison Co.* (1947), 65 Ariz. 332, 180 P.2d 868.) And in such a case, failure to serve the notice in the manner prescribed is not remedied, even if the intended recipient in fact acquires the knowledge which would have been given him by the notice. *Gaither v. Lager*, 2 Ill.2d 293, 118 N.E.2d 4; *Hart v. Bayless Investment & Trading Co.* (1959), 86 Ariz. 379, 346 P.2d 1101; 85 C.J.S. *Taxation* §§ 859, 868 (1954); compare *San Fernando Motors, Inc. v. Fowler* (1972), 17 Ariz. App. 357, 498 P.2d 169.

■■ For these reasons, it did not matter that William L. Smith in fact received the notice left with his wife by the process server. The Revenue Act does not provide for personal service of a notice on an owner resident by leaving a copy at his home with someone else, including his or her spouse. This being so, substituted service of this kind cannot be read into the statute. (See *Cotes v. Rohrbeck*, 139 Ill. 532, 28 N.E. 1110; compare *Crane Co. v. Koper Heating Co.* (1936), 53 Ohio App. 403, 5 N.E.2d 338; see Annot., 172 A.L.R. 521 (1948).) Therefore, failure to comply with indispensable statutory requirements with regard to notice disclosed in the record a defect that precluded the issuance of a valid tax deed. *Clark v. Zaleski*, 253 Ill. 63, 97 N.E. 272; *People v. Banks*, 272 Ill. 502, 112 N.E. 269; *In re Application of County Treasurer*, 16 Ill.App.3d 385, 306 N.E.2d 743.

## IV.

■■ For over a century, it has been the settled law in this State that tax-sale proceedings are in rem, not in personam. (*Olcott v. State of Illinois*, 10 Ill. (5 Gilm.) 481; *People ex rel. Thaxton v. Coal Belt Electric Ry. Co.*, 311 Ill. 29, 142 N.E. 495; *Urban v. Lois, Inc.*, 29 Ill.2d 542, 194 N.E.2d 294.) In the proceedings before us, the trial court's jurisdiction over the land was acquired by the county collector's application for judgment of sale and was retained, not only for issuance of a tax deed, but also for the court to consider whether all statutory requirements therefor had been met. (*Shapiro v. Hruby*, 21 Ill.2d 353, 172 N.E.2d 775.) As a general rule, when the judgment of a court of general jurisdiction recites jurisdictional facts, the recitals import absolute verity and are conclusive against collateral attack. (*People ex rel. Baird & Warner v. Lindheimer*, 370 Ill. 424, 19 N.E.2d 336.) Thus, in tax-sale proceedings, our supreme court has said that while notice requirements of the Revenue Act must be met by a tax purchaser, trial court findings that all statutory notices have been given are not subject to collateral attack. (*Dahlke v. Haw-*

*thorn, Lane & Co.,* 36 Ill.2d 241, 222 N.E.2d 465.) And only recently, in *In re Application of County Treasurer,* 20 Ill.App.3d 291, 314 N.E.2d 300, we adhered to this rule.

■■ This rule, however, does not mean that findings in favor of jurisdiction are conclusive when they are irreconcilable with facts shown in the record. In *Senichka v. Lowe,* 74 Ill. 274, a tax-sale proceeding involving a question analogous to the one before us, the Illinois Supreme Court said that "[i]t has never been held, where the record itself showed that the evidence of jurisdiction upon the court acted was insufficient, that its finding, in favor of its jurisdiction, was conclusive." (74 Ill. 274, 276.) (See *Law v. Grommes,* 158 Ill. 492, 41 N.E. 1080.) In *Goudy v. Hall,* 30 Ill. 109, it was said that "* * * upon the question of the right of the court to act upon the persons or rights of parties, we think there is great propriety in holding that the finding of the court is not conclusive. If the requisite notice has not been given to, or process has not been served upon a party, then the court has no more authority to adjudicate upon his rights, than a stranger, or a private individual." 30 Ill. 109, 116.

Articulation of these principles focuses attention on the fact that, in this case, the record disclosed a defect in the trial court's power to cut off William L. Smith's rights to tax delinquent real estate which he occupied as a resident owner at the time the tax deed petition was filed. Indeed, in appellants' section 72 proceeding, the trial court found, after hearing evidence, that DRG did not personally serve Smith with notice as required by the Revenue Act. It appears, then, that this was not a tax deed proceeding in which the trial court found that all notices required by the Revenue Act had been given, and later adhered to that finding. (Compare *Zeve v. Levy,* 37 Ill.2d 404, 226 N.E.2d 620; *Dahlke v. Hawthorn, Lane & Co.,* 36 Ill.2d 241, 222 N.E 2d 465; *Southmoor Bank & Trust Co. v. Willis,* 15 Ill.2d 388, 155 N.E.2d 308.) This was a case where the record showed a lack of compliance with notice requirements, and in a later section 72 proceeding, the trial court found that the owner-resident of the subject real estate had not been personally served.[5] There-

---

[5] For this reason, *Southern Illinois Power Cooperative v. Lowery,* 79 Ill.App.2d 180, 224 N.E.2d 32; *In re Application of Soldwedel,* 82 Ill.App.2d 179, 225 N.E.2d 811; *In re Application of County Treasurer,* 84 Ill.App.2d 456, 228 N.E.2d 269 and *Landis v. Miles Homes, Inc.,* 1 Ill.App.3d 331, 273 N.E.2d 153 cited in DRG's brief, *Exline v. Weldon,* 57 Ill.2d 105, 311 N.E.2d 102; *In re Application of County Treasurer,* 20 Ill.App.3d 291, 341 N.E.2d 300, cited in its Petition for Rehearing, all in support of the rule that except for fraud, the findings of the trial court in a tax deed preceeding are immune from collateral attack, are inapposite to the case before us.

fore, we conclude that the trial court did not have jurisdiction over William L. Smith when it ordered issuance of the tax deed to DRG. See *Nix v. Smith*, 32 Ill.2d 465, 207 N.E.2d 460; *Armstrong v. Obucino*, 300 Ill. 140, 133 N.E. 58; Annot., 134 A.L.R. 796 (1941); compare *Gates v. Morris* (1941), 123 W.Va. 6, 13 S.E.2d 473.

## V.

■■ It was to question the service of notice on William Smith that appellants filed their section 72 petition. From what they alleged, they relied on the fact that the record contained the testimony of DRG's agent and process server which contradicted his affidavit and one filed by DRG's lawyer, both asserting that on September 13, 1971, they personally served Smith with a copy of the required statutory notice. These affidavits, one by a lawyer, contained assertions that were untrue. Appellants' petition alleged fraud. It was timely. And during its consideration DRG did not show, nor did the trial court find, that the Smiths were negligent in seeking vacature of the tax-deed order. Therefore, the petition met all the jurisdictional prerequisites for its filing, and it properly invoked section 72 of the Civil Practice Act.[6] (*People ex rel. Wright v. Doe*, 26 Ill.2d 446, 187 N.E.2d 222; *Cox v. General Motors Corp.*, 132 Ill.App.2d 209, 267 N.E.2d 513.) In decisions under this section, it has been held that filing of false affidavits concerning matters of service is fraud which would justify grant of relief by a trial court. (*In re Application of County Collector*, 7 Ill.App.3d 124, 287 N.E.2d 81, *Schott v. Short*, 131 Ill.App.2d 854, 268 N.E.2d 712.) However, for reasons which do not appear in the record before us, the trial court concluded that DRG committed no fraud in procuring the tax-deed order.[7] It found that William L. Smith was not personally served by DRG on September 13, 1971, but that he was given a copy of the notice by Betty Smith. Despite this finding, the trial court denied the Smiths' section 72 petition.

[6] See Ill. Rev. Stat. 1971, ch. 110, §§ 72(1), (5) (7).

[7] After granting DRG's petition for rehearing, we entered an order directing the Smiths to file with us the report of the proceedings of the section 72 hearing. We wanted to see, if we could, the evidentiary basis of the trial court's conclusion. DRG, however, objected to the order. But from the submission of the parties, we learned that the report of proceedings was not included in the record on appeal because of the death of the court reporter hired by the Smiths. We also learned that while DRG was objecting to the filing of the report of proceedings the Smiths could not procure, it had a copy in its possession. Nonetheless, we considered the objections; and although finding them hypertechnical, we concluded they expressed a plausible construction of the applicable Supreme Court Rule. We sustained them. Therefore, we do not know the evidentiary basis for the trial court's conclusion that DRG committed no fraud in procuring the tax deed order.

A petition under this section is addressed to the equitable powers of the trial court when exercise of such power is necessary to prevent injustice. (*Ellman v. De Ruiter*, 412 Ill. 285, 106 N.E.2d 350.) Urging that this elemental principle does not apply to this case, DRG has cited to us *Zeve v. Levy*, 37 Ill.2d 404, 266 N.E.2d 620, and a number of supreme and appellate court decisions which hold that relief under section 72 from a tax-deed order that finds compliance with statutory requirements is available only upon proof of fraud. We have examined these decisions and observe that in none of them did it appear in the record that the tax-deed applicant failed to comply with the notice requirements of the Revenue Act, and that the trial court so found in a section 72 proceeding.

■■ For this reason, we are of the opinion that when the trial court found William L. Smith was not personally serviced with the required notice, it had to vacate the order that issued the tax deed because "[a] purchaser or assignee shall not be entitled to a tax deed to the premises sold unless not less than 3 months nor more than 5 months prior to the expiration of the period of redemption he shall give notice of the sale and the date of expiration of the period of redemption to the owners, occupants and parties interested in the premises. \* \* \* Such notice shall be served by the purchaser or assignee upon owners who reside on any part of the real estate sold by leaving a copy of the notice with such owners personally." (Ill. Rev. Stat. 1971, ch. 120, § 744; compare Ill. Rev. Stat. 1969, ch. 120, § 744.) The failure of DRG to comply with these requirements, a failure that affected the trial court's power to issue a valid tax deed, was within the scope of the section 72 petition filed by the Smiths. See *Collins v. Collins*, 14 Ill.2d 178, 151 N.E.2d 813; *Lake Shore Savings & Loan Association v. American National Bank & Trust Co.*, 91 Ill.App..2d 143, 234 N.E.2d 418; *In re Petition of Stern*, 2 Ill.App.2d 311, 120 N.E.2d 62; Ill. Rev. Stat. 1971, ch. 110, § 72(7).

Therefore, the order that denied the Smiths the relief they prayed for in their section 72 petition is reversed with directions that the trial court vacate issuance of the tax deed and undertake further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

DOWNING, P. J., and HAYES, J., concur.