Walter HEIN and Wanyce Hein,
Plaintiffs and Appellees,

v.

Thomas MARTS, and the South Dakota
Department of Natural Resource Devel-
opment, Defendants and Appellants.

Nos. 12843, 12845.

Supreme Court of South Dakota.

Argued March 17, 1980.

Decided July 30, 1980.

Gary E. Davis of Johnson, Johnson & Eklund, Gregory, for appellees.

Jack Gunvordahl, Gunvordahl & Gunvordahl, Burke, for appellant Marts.

John Smith, Asst. Atty. Gen., Pierre, for appellant South Dakota Department of Natural Resource Development; Mark V. Meierhenry, Atty. Gen. and Robert L. Timm, Deputy Atty. Gen., Pierre, on the brief.

HENDERSON, Justice.

## ACTION

On July 28, 1977, Thomas Marts was issued a permit by the South Dakota Department of Natural Resource Development (DNRD), acting through the Water Rights Commission, for the appropriation of water by constructing a dugout and pumping water on his land. As interested parties, Walter and Wanyce Hein, appellees, commenced suit in July of 1978 seeking injunctive and prohibitive relief and alleging the invalidity of the permit. On December 20, 1978, the Circuit Court, Sixth Judicial Circuit, reversed the granting of the permit to Marts and remanded the case to the DNRD. This is an appeal from that order by appellants, the DNRD and Marts. We affirm.

## FACTS

On October 20, 1976, Marts mailed an application to the DNRD in regards to obtaining a permit for water appropriations. After notice of a hearing was published in the local newspaper (The Bonesteel Enterprise) for two successive weeks, a hearing was held in Huron, South Dakota, on November 17, 1976.

Mr. Hein attended the November 1976 DNRD hearing in Huron and indicated his objections to the granting of the permit to Marts. Mr. Hein testified that a spring-fed stream runs through his property, which provides water for his cows in conjunction with his dairy operation. It was Mr. Hein's opinion that this water supply would be depleted if Marts were granted a water appropriation permit. The application of Marts was deferred, pending a staff investigation.

Subsequent to the staff investigation and report, a rehearing on Marts' application occurred on July 28, 1977, in Brookings, South Dakota. As testified to by Betty Westlund, normal office procedure entails preparing and mailing out notice of hearings to all interested parties or persons present at prior hearings. During oral argument, counsel for appellant DNRD made the statement that it could not prove that

notice was sent to the appellees. Appearing from the record is a finding of fact by the trial court that appellees did not receive notice. Marts was granted a water appropriations permit at this rehearing. No one present at the rehearing opposed the granting of the permit. Mr. Hein was not sent notice of the final decision on the water application.

In accordance with his permit, Marts began construction of a dugout on or about April 11, 1978. The Heins observed this construction taking place and on April 13, 1978, hired Charles Rick Johnson, an attorney in Gregory, South Dakota, to find out if, in fact, Marts had acquired a water permit. Attorney Johnson made a written inquiry to the Water Rights Commission regarding Marts' application for a water permit. In response to this inquiry, John Hatch, Chief Engineer of the Water Rights Commission, sent a letter dated April 19, 1978, to Attorney Johnson stating that Marts had been granted a water permit by the Water Rights Commission on July 28, 1977. Via Attorney Johnson, the Heins saw a copy of this letter a few days after April 19, 1978.

Marts had been irrigating his land for approximately three months (May-July) when the Heins filed suit in July 1978 alleging the invalidity of the water permit issued to Marts by the DNRD, due to their lack of notice as to the hearing of July 28, 1977.

## ISSUES

### I.

Whether proper service of notice of an administrative agency's final decision was made upon an interested party, thereby allowing the time for appeal under SDCL 1–26–31 to begin to run.

### II.

Whether a party may invoke injunctive relief on an administrative agency's final decision when the party seeking the relief was not afforded due process by the agency in its decision making process.

## DECISION

### I.

In April of 1978 appellees observed that appellants had commenced constructing a dugout upstream from their property. Appellees approached Attorney Johnson on April 13, 1978, and requested that he inquire to the Water Rights Commission regarding the status of appellant Marts' application. On behalf of his clients, Attorney Johnson sent a letter to Chief Engineer Hatch on this matter. However, Attorney Johnson did not identify for whom he was making inquiry. In response, Hatch sent a letter dated April 19, 1978, stating that appellant Marts' application, "Permit No. 1460–2 was approved by the Water Rights Commission on July 28, 1977, with the following guidelines . . . ." Appellees saw this letter approximately three to four days after Attorney Johnson received it.

We do not agree with appellants' contention that the mailing of the Water Rights Commission's decision to Attorney Johnson, followed by the receipt of that letter to appellees, fulfills the notice requirements set forth in SDCL 1–26–25 and SDCL 1–26–31. SDCL 1–26–25 provides in part that: "Parties shall be notified either personally or by mail of any decision or order." SDCL 1–26–31 states that:

An appeal shall be taken . . . within 30 days after the agency served notice of the final decision or, if a rehearing is authorized by law and is requested, within 30 days after notice has been served of the decision thereon.

As determined by the trial court's findings of facts, there can be no doubt that the proceeding regarding Marts' application for a water permit was a contested case under SDCL 1–26–1(2). Mr. Hein appeared personally before the Water Rights Commission in Huron, South Dakota, on November 17, 1976, and strenuously objected to the granting of the permit. At the conclusion of the hearing, a motion was made and carried that the application be deferred for

staff investigation. After the November hearing in 1976, appellees did not receive any further correspondence, notices or word from the Water Rights Commission regarding further action on appellant Marts' water permit application. On July 28, 1977, a subsequent hearing was held in Brookings, South Dakota, at which the DNRD granted appellant Marts a water permit. Appellees were not served or sent any form of notice of this decision.

The letter sent by Hatch of the DNRD to Attorney Johnson dated April 19, 1978, cannot be deemed equivalent of a final decision pursuant to SDCL 1–26–25. As stated in SDCL 1–26–25, a final decision "shall include findings of fact and conclusions of law, separately stated. Findings of facts, if set forth in statutory language, shall be accompanied by the concise and explicit statement of the underlying facts supporting the findings." The letter to Attorney Johnson merely indicated that the water application had been granted; it does not set forth any findings of fact and conclusions of law upon which the Water Rights Commission decision was based. Thus, for purposes of this statute, the letter cannot be viewed as a final decision.

We do not agree with appellants' argument that appellees received actual notice of the final decision on the Marts application through the letter Attorney Johnson received from the DNRD. As a general rule, where a method of giving notice is prescribed by statute, there must be strict compliance with the prescribed method in form of notice. *Smith v. D. R. G., Inc.*, 29 Ill.App.3d 406, 331 N.E.2d 614 (1975); *Cowl v. Wentz*, 107 N.W.2d 697 (N.D.1961); *In re Sioux City Stockyards Co.*, 222 Iowa 323, 268 N.W. 18 (1936). Moreover, these cases emphasize that there must be strict compliance with notice provisions where the notice affects property rights or where it is to form the basis for a suit.

Appellants cite *In the Matter of Grimes Estate*, 87 S.D. 187, 204 N.W.2d 812 (1973), as authority for the proposition that notice sent to Attorney Johnson regarding the granting of the Marts application, in the letter of April 19, 1978, constitutes sufficient notice to Attorney Johnson's clients, appellees. However, *Grimes*, supra, dealt with an attorney-client relationship where the attorney had been representing his client from the initial stages of the proceedings and had appeared as legal counsel for him several times throughout the matter in which his client was involved. Here, Attorney Johnson did not represent the appellees at any time before the Water Rights Commission. Indeed, no attorney-client relationship existed until almost nine months after the application was granted.

> [If] an attorney has appeared in court on his [client's] behalf so as to become his attorney of record, the attorney has the authority, as long as he continues to appear and act as the attorney of record, to receive . . . notices . . . .
>
> Where he does not appear as attorney of record in pending litigation at the time, an attorney has no authority to receive notices. . . .

7A C.J.S. Attorney and Client § 196 (1967).

"Attorney of record" is generally defined as "the attorney whom the court recognizes as representing the party in the proceedings before it." 4A Words and Phrases, "Attorney of Record," 522 (1960).

Attorney Johnson was not the attorney of record for the appellees for any of the proceedings involving the application for the water permit. Thus, it is evident from the facts that Attorney Johnson's status as attorney for appellees did not qualify him to receive notice of the Water Rights Commission's decision on behalf of his clients.

Also, appellants cite SDCL 15–6–5(b) as an authority for the proposition that notice was properly served upon appellees. This argument is also unpersuasive. SDCL 15–6–5(b) states: "Service by mail shall be by first class mail and is complete upon mailing." At trial, appellants offered testimony to indicate the normal procedure used by the DNRD to send notice to all interested parties in regards to a particular matter. This testimony came from Mrs. Betty Westlund who was usually responsible for pre-

paring such notices and seeing that they were timely placed in the United States mail. Appellants did not, however, elicit any testimony from Mrs. Westlund or others as to the mailing of notice to appellees or any of the interested parties regarding the deferred hearing on the Marts application. Thus, appellants failed to show that actual notice of the hearing addressed to appellees was mailed. Consequently, SDCL 15–6–5(b) is not beneficially applicable to appellants' position.

## II.

Appellants also contend that appellees' right of relief is limited to remedies provided for by law, i. e., the appellate process, and precludes any type of equitable relief. We disagree.

Appellees' original pleading contained prayers for a writ of prohibition (Count I), an injunction (Count II), an administrative appeal (Count III), and damages (Count IV). The lower court denied a motion for summary judgment by the appellants on Counts I and II on November 21, 1978, and also denied appellants' motion to dismiss Counts I and II on December 20, 1978. The motions for summary judgment and dismissal were also denied in regards to Count III. A decision on Count IV was held in abeyance and separated from Counts I, II and III. The lower court reversed and remanded the Water Rights Commission's decision granting Marts a water appropriation permit on the ground that notice had not been received by appellees prior to the Commission's rehearing of July 28, 1977.

■ The prerequisite to injunctive relief is the lack of an adequate and complete remedy at law. *Anderson v. Kennedy*, 264 N.W.2d 714 (S.D.1978). SDCL 21–30–2 states that a writ of prohibition may be issued "in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law." Appellants premise their contention on the notion that an appeal by appellees from the Water Rights Commission's final decision would be a "plain, speedy, and adequate remedy." Several pertinent factors do not support this premise.

■ First, SDCL 1–26–32 permits a stay of all proceedings on appeal for only ten days. An additional stay may be granted, pending final decision of the court, but only if the plaintiff furnishes an appropriate security deposit. As applied to the facts in this case, appellees would have continued to suffer irreparable harm due to the irrigation practices of Marts once the ten day stay had terminated. Further, since it was the non-compliance with the notice requirements of SDCL 1–26–25 and SDCL 1–26–31 by the Water Rights Commission (discussed supra) that prevented appellees from being allowed to appeal the Commission's decision when it was initially made, it cannot be reasonably asserted that appellees were responsible for failing to timely exercise their right of appellate review.

■ We believe the holding in *Tisher v. Jarrett*, 75 S.D. 503, 68 N.W.2d 592 (1955), is applicable in this case. In *Tisher*, the plaintiff filed suit for injunctive relief to keep the defendant from obstructing the flow of water in a drainage ditch. One of the results of the obstruction was that the plaintiffs' land became soggy and unfit for grazing or farming. Plaintiffs also alleged that monetary compensation for damages to their land would be difficult to determine and inadequate. In addition, plaintiffs felt injunctive relief was necessary to avoid a multiplicity of suits brought by others similarly situated. The defendant in *Tisher* moved for a dismissal on the request for injunctive relief on the ground that since plaintiffs were in an organized drainage district, their potential remedies could only be provided under the statutes governing the establishment and maintenance of drainage districts. These statutes do not provide for an injunction.

The court in *Tisher*, supra, held that an injunction was a proper and available remedy due to the inadequacy and inconvenience of a damages remedy. In reaching its decision, the court quoted from High, Injunctions, § 30:

"To deprive the plaintiff of the aid of equity by injunction, it must also appear

that the remedy at law is plain and adequate; in other words, that it is as practicable and efficient to secure the ends of justice and its proper and prompt administration as is the remedy in equity. And, unless this is shown, a court of equity may lend its extraordinary aid by injunction, notwithstanding the existence of a remedy at law."

*Tisher*, 75 S.D. at 506, 68 N.W.2d at 593.

It is obvious that if in the case at hand the legal remedy of appeal was the sole relief available to appellees, the same hardships and inequities as mentioned in *Tisher* would occur. By providing the equitable relief of injunction and writ of prohibition, these inequities would be alleviated.

Accordingly, the legal remedy of appeal of the Water Rights Commission's decision can hardly be deemed as "practical, efficient, and proper" as are the equitable remedies of injunction and writ of prohibition. Appellees are entitled to invoke equitable remedies as a means of seeking relief from the final decision of the Water Rights Commission.

All other collateral issues raised by appellants are determined by the foregoing decision.

The order is affirmed and the case is remanded for a rehearing on Marts' application for a water appropriation permit.

WOLLMAN, C. J., and FOSHEIM, J., concur.

DUNN and MORGAN, JJ., concur specially.

DUNN, Justice (concurring specially).

I concur in the result.

I do not find *Tisher v. Jarrett*, 75 S.D. 503, 68 N.W.2d 592 (1955), controlling here. *Tisher* was decided under the old doctrine of whether injunction was proper in order to avoid a multiplicity of lawsuits for continuing damages caused by obstructing the water flow.

Here, we are concerned that the plaintiffs did not follow the appeal procedure provided for one aggrieved by the final decision of the Water Rights Commission. If the Commission had given the proper notice, I would hold the plaintiffs to the statutory remedy of appeal which would have given them complete relief. I concur in the result because the Commission did not give these plaintiffs notice, and thus they were foreclosed from following the statutory appeal by this lack of due process. They had no plain and adequate remedy of appeal through no fault of their own and thus became entitled to seek equitable relief from this final decision of the Commission.

The approach under *Tisher* is too broad in deciding a case under the Administrative Procedures Act and could well be considered a precedent for seeking direct equitable relief in the courts rather than pursuing the remedy provided by the legislature under the Administrative Procedures Act.

I am authorized to state that MORGAN, Justice, joins in my special concurrence.