351 N.W.2d 119 (1984)
In the Matter of the Decision of the STATE OF SOUTH DAKOTA WATER MANAGEMENT BOARD APPROVING WATER PERMIT NO. 1791-2.
No. 14296.
Supreme Court of South Dakota.
Argued February 14, 1984.
Decided June 27, 1984.
*121 Daniel J. Doyle, Asst. Atty. Gen., Pierre, for South Dakota Conservancy Dist. and South Dakota Water Management Bd.; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.
Jacqueline Huber, Belle Fourche, for appellants Henry Bruch and Art Crowley, Jr.
James S. Nelson, Rapid City, for appellee ETSI.
DUNN, Justice.
This is an appeal from an order of the circuit court affirming the South Dakota Water Management Board's approval of Water Permit No. 1791-2, and from orders of the circuit court denying several motions. We affirm.
On September 24, 1981, the South Dakota Legislature passed legislation which allowed the South Dakota Conservancy District (SDCD) to make application to the Water Management Board (Board) for a permit to appropriate water from Oahe Reservoir; the same act also allowed SDCD to transfer the permit to Energy Transportation Systems, Inc. (ETSI).[1] ETSI plans to pipe the water to Wyoming, where it will be used to transport coal in a coal slurry pipeline.
On September 25, 1981, SDCD submitted its application (No. 1791-2), including a project map, to Board. The application described the proposed location of the diversion point, the amount of water to be diverted, the period of use of the water, the intended use of the water, and the general project plan. The hearing on this application had originally been scheduled for October 15, 1981, but was rescheduled for October 27, 1981, then for November 5, 1981, and finally for January 5, 1982. The reason for the rescheduling was that SDCD had not yet entered into the contract to transfer the water permit to ETSI. Notice of the January 5, 1982, hearing was published on December 17 and 24, 1981, in The Times, the official newspaper of Stanley County, South Dakota, as required by statute,[2] and in seventeen other South Dakota newspapers during the period of December 19 to 31, 1981.
Board held the hearing on the application on January 5, 1982, at Philip, South Dakota. At least forty-eight people who were neither witnesses, attorneys, nor intervenors attended the hearing. Board made it clear at the beginning of the hearing that those persons who wished to intervene should identify themselves and that all others would have an opportunity to testify. After a lengthy meeting, Board continued the hearing until January 14, 1982, so the intervenors could obtain witnesses.
The January 14 hearing was held in Rapid City, South Dakota, and after a day of testimony, the hearing was again continued to facilitate case preparation and public participation. The continued hearing was held on January 21, 1982, in Pierre, South Dakota; at that time, after all parties had presented their testimony, Board voted to approve the permit. On February 4, 1982, after examining proposed findings of fact and conclusions of law from interested parties, Board adopted its findings and conclusions.
There are two appellants in the appeal before this court: Art Crowley, Jr. and Henry Bruch. Appellant Crowley did not attend any of the hearings, did not intervene, and did not submit proposed findings of fact and conclusions of law to Board. Appellant Bruch attended the hearings on January 5 and 14, 1982, and successfully intervened on January 14; on February 4, 1982, he submitted his own proposed findings of fact and conclusions of law to Board. Throughout the process, Bruch was given the opportunity to call his own witnesses, cross-examine other witnesses, *122 and testify on his own behalf. The record indicates that his primary concerns at the hearings were the route of the pipeline and the question of eminent domain.
Appellants appealed the decision of Board to circuit court, pursuant to SDCL 1-26-30, and moved for a dismissal of the findings and conclusions of Board. They also moved to present additional evidence to Board, to present additional testimony before the circuit court, and to stay the use of Water Permit No. 1791-2 during appeal. The circuit court denied all the motions.
Our first concern in this appeal is the proper scope of review. Prior to the amendment of SDCL 1-26-37, this court reviewed the record of an administrative agency in the same manner as the circuit court, guided by SDCL 1-26-36 and not bound by any presumption that the circuit court was correct. We would uphold a ruling or decision of an administrative agency unless we found that in light of the entire record the decision was clearly erroneous or we were left with a firm and definite conviction that a mistake was made. Matter of Ackerson, Karlen & Schmitt, 335 N.W.2d 342 (S.D.1983); Deuter v. South Dakota Highway Patrol, 330 N.W.2d 533 (S.D.1983).
On July 1, 1983, the following addition to SDCL 1-26-37 became effective: "The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo." In the recent decision of State v. Miller, 349 N.W.2d 42 (S.D.1984), we decided that despite the new language in the statute, this court still reviews the administrative decision essentially in the same manner as did the circuit court; the required deference to the circuit court has not changed.
Concerning the actual merits of the case, we first observe that we are here dealing with special legislation to permit the appropriation of water from the Missouri River for energy industry purposes and to permit SDCD to enter into a contract for sale of the water. The desirability and feasibility of such a contract were fully explored and passed on by the legislature. Standards were set by the legislature as to the amount of water which could be appropriated each year, so that there would be no appreciable diminution of the flow of water in the river.
While the legislative act still required the formality of a hearing and the granting of a permit by Board, the act left very little power with Board to deny a permit. As the title to the act states, the legislation was intended "to authorize, facilitate and effectuate the marketing by the South Dakota conservancy district of water for energy industry use ..." (emphasis added). 1982 S.D.Sess.Laws, ch. 1 at p. 4. Furthermore, the act states: "Notwithstanding any other provision of law, the district may acquire, by obtaining a permit or permits from the water management board, rights to appropriate water for energy industry use ..." (emphasis added). Id. at § 3, p. 4-5.
With these realities in mind, we turn to the issues of this case. Appellants have raised a total of fourteen different issues on appeal. A close examination of the record, however, reveals that of all these issues raised on appeal, appellants raised only two of them before Board: actual notice to landowners and the necessity of an environmental impact statement. Appellant Bruch's other concerns at the hearings dealt with eminent domain and the pipeline route, neither of which are raised on appeal. Appellant Crowley raised no issues before Board since he did not appear at any of the hearings.
It is well settled that if objections are not raised before the administrative agency at the hearing, they are not preserved for appeal. Application of Am. State Bank, Pierre, 254 N.W.2d 151 (S.D. 1977). Accord, Buchholtz v. Iowa Dept. of Public Instr., 315 N.W.2d 789 (Iowa 1982); Amoco Production Co. v. N.D. Indus. Com'n., 307 N.W.2d 839 (N.D.1981); B. Schwartz, Administrative Law § 206 (1976). *123 See also Matter of South Lincoln Rural Water System, 295 N.W.2d 743 (S.D.1980). In addition, where objections at a hearing were made on behalf of parties who did not appeal, persons who did not join in those objections may not avail themselves of such objections in court proceedings. City of Portsmouth v. Public Utilities Com'n, 154 Ohio St. 174, 93 N.E.2d 563 (1950); 73A C.J.S. Public Administrative Law and Proc. § 214 (1983). Therefore, we will consider only those issues on appeal which appellants raised before Board at the hearings.
The first of these issues which appellants raised before Board is the question of notice to property owners on the pipeline route. Appellants claim they are "affected landowners" and thus should have been given actual notice by letter rather than merely notice by publication. They maintain that such actual notice is required by due process considerations whenever private property is taken. The circuit court ruled that holding a hearing on the application for a permit to appropriate water does not give rise to a requirement of personal service upon any citizen of South Dakota.
It is certainly correct that due process rights apply to contested cases before administrative agencies. Application of Union Carbide Corp., 308 N.W.2d 753 (S.D.1981). It is also correct that in proceedings affecting private property interests, when the owners of the property are known, notice to them by publication is insufficient. See, e.g., Mullane v. Central Hanover B. & T. Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Nevertheless, a consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by government action. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).
Here, the government function was not a determination of the pipeline route, or of ETSI's powers of eminent domain, or of the taking of any private property. The sole question before Board was the granting of a permit for appropriation of water from Oahe Reservoir. This question was of concern to all South Dakotans equally, since "all water within the state is the property of the people of the state." SDCL 46-1-3. Therefore, individual landowners within the state, such as appellants, had no greater interest in the matter than any other citizen of South Dakota, and notice by publication was sufficient.
The fallacy of appellants' personal service argument is shown by the fact that the pipeline route was subject to change, and the current proposed right-of-way does not even cross the property of appellants. Also, all property owners on the final pipeline route will have due process rights under SDCL ch. 21-35 if ETSI attempts to use the power of eminent domain. Thus, the circuit court did not err in concluding that personal service was not necessary.
A related question involves the sufficiency of the published notice and whether the notice gave citizens a fair opportunity to participate at the hearings. Appellants maintain that the present case is similar to Application of Union Carbide Corp., supra, in which this court overturned administrative findings partly because notice of the hearings was published over a holiday period. We disagree.
In Application of Union Carbide Corp., we ruled that the published notice was insufficient for two reasons: 1) the only notice appeared just seven days before the hearing date, and that seven-day period included a three-day Labor Day weekend; 2) the notice was not in conformity with the statute or agency rules. 308 N.W.2d at 759. In the present case, however, quite a different situation exists. First, the published notice not only met the statutory requirements, it exceeded them. SDCL 46-5-17 required publication once each week for at least two consecutive weeks in the newspaper in the county where the water is appropriated, with the second publication at least four days before the hearing. Here, publication was made in the official *124 Stanley County newspaper on December 17 and 24, 1981, while the hearing was not held until January 5, 1982. Notice was also published in seventeen other South Dakota newspapers, including the Rapid City Journal, Pierre Daily Capitol Journal, Sioux Falls Argus-Leader, and numerous West-River publications. In Application of Union Carbide Corp., the only notice was published in the Hot Springs Star. Second, even though the holiday season intervened during publication, there still remained at least ten working days between the first notice and the first day of hearing, compared with the four days in Application of Union Carbide Corp.
It is also difficult to believe that appellants were caught by surprise by the hearing and its contents in light of the following facts: the South Dakota Legislature met in special session in September of 1981 to deal with just this issue; and notice of the proposed October 15 and 27, 1981, and November 5, 1981, hearings was published in a manner similar to that for the January 5, 1982, hearing. Therefore, not only was there proper statutory notice for the January 5, 1982, hearing, it is clear that news of the ETSI pipeline and of Board hearings was extant throughout South Dakota prior to the holiday season.
An additional factor of importance in this case is that unlike Application of Union Carbide Corp., in which the administrative hearing was held for only one day, in the present case the hearings were held on three separate days in three different cities. At the January 5 hearing in Philip, almost fifty people appeared, and all were given an opportunity to testify. At the request of the Black Hills Alliance, the hearing was postponed until January 14 to give time to bring in witnesses. At the Rapid City hearing on January 14, in response to a request for more time to prepare, the hearing was again postponed until January 21 in Pierre. All of these hearings were well attended and everyone present was given an opportunity to be heard. At no time did Board deny a request for further postponement. It would seem that despite the holiday season, the interested parties were given every opportunity to appear and be heard. We conclude that the due process rights of South Dakota citizens were not violated.
The second contention raised by appellants before Board is that Board should have required an environmental impact statement prior to hearings on the application for the permit. They maintain that although an environmental impact statement is discretionary under SDCL 34A-9-4,[3] other statutes have transferred to Board the functions of environmental protection, and that these functions require an environmental impact statement. The circuit court found no such statement was necessary.
Under our present statutes, Board is required to perform the functions of the former state water rights commission, SDCL 1-40-19, and the former environmental protection department. SDCL 1-40-20. Board is also required, under SDCL 34A-2-11, to formulate standards of water quality and to consider environmental conditions placed upon state waters. However, none of these statutes requires a formal environmental impact statement. More importantly, SDCL 34A-9-4, the statute most pertinent to this issue, explicitly makes an environmental impact statement optional. Therefore, contrary to appellants' claims, these statutes evidence a legislative intent not to require an environmental impact statement every time Board rules on a water appropriation permit. Here Board exercised its discretion and decided not to order such a statement; this may have been due to the fact that no evidence was produced at the hearings to indicate any serious effects on the environment. We hold that the circuit court's finding was not clearly erroneous.
*125 Finally, appellants' claims that the circuit court improperly denied motions to present additional testimony to the court and to present additional evidence to Board (issues III and IV) are without merit. These motions were based upon evidence which appellants could have raised before Board at the hearings, but they failed to do so.
The judgment of the circuit court is affirmed.
FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.
HENDERSON, J., dissents.
HENDERSON, Justice (dissenting).
Due process arises out of constitutional provisions that a person may not be deprived of life, liberty, or property without due process of law. United States Constitution art. XIV, § 1; United States Constitution amend. 5; South Dakota Constitution art. VI, § 2.
"The fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363, 1369 (1914). A hearing must be held "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965). "The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." Goldberg v. Kelly, 397 U.S. 254, 268-69, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287, 299 (1970). The test is fundamental fairness, not whether the notice meets technical rules of common law pleadings. Wedergren v. Board of Directors, 307 N.W.2d 12 (Iowa 1981).
The notice in question provided, inter alia, "Any person who may be affected by a Board decision who desires to present evidence or cross-examine witnesses according to SDCL [ch.] 1-26 may notify the Board in writing prior to the hearing or orally at the hearing. This hearing is an adversary proceeding." (Emphasis supplied.) In my view, such a pronouncement as stated in the notice created, ab initio, a contested case hearing to be held pursuant to SDCL 1-26-1(2).[1] This Court has held that the phrase as "required by law" contained in said statute "includes constitutional requirements of fair play, due process and agency rules, as well as the requirements of statutory law." Valley State Bank of Canton v. Farmers State Bank, 87 S.D. 614, 621, 213 N.W.2d 459, 463 (1973) (emphasis in original).
The Administrative Procedures Act provides for reasonable notice in SDCL 1-26-16: "In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice." The minimum time period employed by the Board for publication, "once each week for at least two consecutive weeks" and "[t]he second publication must occur at least four days before the first day of the board meeting at which the matter is noticed to be heard," per SDCL 46-5-17 (repealed in 1983), does not meet the reasonable test. The majority opinion adopts this minimum standard in error. Fundamentally, therefore, the rationale outpouring therefrom is flawed. Although the Water Management Board timewise might have met a quasi-legislative or rule-making proceeding, it failed in its adjudicatory capacity to provide reasonable notice to these appellants and all citizens of South Dakota. There is a distinction between a board or agency acting in an adjudicatory hearing via a contested matter, and a board or agency acting in a quasi-legislative or rule-making proceeding. See Application of Union Carbide Corp., 308 N.W.2d 753, 757 (S.D.1981). The majority opinion, in effect, anchors its due process position upon a premise that there was no technical violation of the applicable provisions of SDCL ch. 46. Due process is not an equation, it is common sense and a *126 reasonable approach applied on a case-by-case basis. This minority opinion stands for the proposition that there has been more than a technical violation of due process. The spirit of the law has been broken, for the Water Management Board was bound, by the statutes of this state and decisions of the United States Supreme Court, to a "reasonable test" standard. Reasonableness did not prevail. A sense of fair play and fairness did not prevail. A reasonable time had to be afforded not only to these appellants but every citizen in this state, who had a vested interest in the water resources of this state, to make an appearance and to be heard. Roller v. Holly, 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520 (1900). A contract of momentous consequence to this state and its citizens was officially signed by the South Dakota Conservancy District, the state, and ETSI, a private corporation, on December 23, 1981. With all of the social, economic, technological, scientific, and ecological impact, the import and impact of said contract was set for hearing on January 5, 1982, at Philip, South Dakota.[2] The ink was barely dry on the contractonly thirteen days had elapsed; not only every man, woman, and child in this state, but the affected people in western South Dakota, were supposed to be prepared to go to battle in an "adversary proceeding." It was, in reality, a well-prepared Goliath beating on his chest, trumpeting the challenge of battle, and calling for David to come forth from his flock.
Considering holidays and weekends, with government offices closed and non-access to counsel, due process for preparation totaled 7-9 working days. Publications of the hearing took place during the holiday season, and in most counties on Christmas Eve and New Year's Eve. See Water Management Board Finding of Fact number 4. There were 6 working days intervening between the original hearing on January 5 and the continued hearing on January 14. The continuance from January 14 to January 21 provided 4 more working days. All in all, those summoned to participate had 17-19 days to employ counsel, hire experts, secure witnesses,[3] issue depositions,[4] depose witnesses, secure copies of the contract, review a federal impact study attached to the water permit application, review the application itself, contact federal officials, study the applicable law, prepare and serve Notices of Intervention, and legally prepare themselves in all pertinent matters for a contested hearing. Their opportunity to be heard at a meaningful time and in a meaningful manner was inherently violated by time strictures. An impossible task was built in. Notwithstanding the presence of interested citizens, one appellant, and a protest by groups and individuals against the state officials and ETSI proceeding with evidence, evidence was taken.
The State of South Dakota does not own the water in the State of South Dakota. Neither does ETSI. Indeed, the sovereign and this private corporation contracted between themselves concerning the people's water. SDCL 46-1-3 expresses that "all water within the state is the property of the people of the state ...." This Justice hazards that this sweeping policy declaration is binding upon the people of this state concerning certain water in this state. What say the legal scholars or judges of this Nation concerning the impounded water created by the great dams built across *127 the mighty Missouri River in South Dakota? The downstream stateswhat are their rights to these impoundments? These questions will be answered in due time but are now blowing in the wind. Perhaps the flame of wisdom will open the horizons of legal minds so that this water will one day nourish the dry plain that it might be fruited. This I know: Several downstream states, including our sister state of Nebraska, have filed a federal lawsuit to stop the sale. In early May 1984, United States District Judge Warren Urbom of Lincoln, Nebraska, issued an injunction blocking the sale of these impounded waters from South Dakota to ETSI. Therefore, the very subject of this appeal is now, in a sense, being litigated in federal courts.[5]
SDCL 46-1-4 essentially provides that because of conditions prevailing in this state, the general welfare requires that water resources be put to their highest beneficial use and that water should be conserved for the best interests and welfare of the people. Priority is given for certain uses under the state statutes to include domestic uses, SDCL 46-1-5. Under SDCL 46-1-10, vested rights are protected. The municipalities and the state itself are limited to uses of water which meet their "reasonable and existing needs." SDCL 46-1-5.
ETSI desires to pipe Missouri River water, taken from the great Oahe Reservoir near our State Capitol, across the vast prairie of western South Dakota, where it would be mixed with crushed coal and thence piped to the southern states. The Oahe Reservoir was constructed by the United States of America and remains today a federal project under jurisdiction of the United States Corps of Engineers. See Act of December 22, 1944 (58 Stat. 665).
Reasonable notice is required prior to any action affecting an interest in life, liberty, or property protected by the Due Process Clause. Mennonite Board of Missions v. Adams, ___ U.S. ___, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Every square inch of farm or ranch land which is crossed in western South Dakota with the ETSI pipeline affects property either through (a) beneficial use of water not obtained (the water shall carry coalnot be placed on wheat or alfalfa fields)[6] or (b) beneficial use of water hopefully to be obtained or (c) the right of eminent domain which attaches to the permit per SDCL 46-8-1 or (d) the conservation of water so that it shall not be unreasonably used, contrary to SDCL 46-1-4. Appellants are western South Dakota ranchers. At the time of the hearing on January 5, 1982, plans for the ETSI Pipeline Project included a crossing of their lands. As citizens of this state, or as landowners who had an interest in water resources to be piped to Wyoming and thence to the southern states or as landowners whose land was directly affected at the time of the hearing, appellants enjoyed (1) a right of due process and (2) standing before the Water Management Board. The majority opinion would shuffle their rights (by viewing the totality and magnitude of the case in a vacuum) into a narrow channel of eminent domain, i.e., condemnation proceedings. Condemnation might settle a dollar amount for land taken or easements secured, but it does not satisfy the quest of citizens, farmers, and ranchers in western South Dakota for reasonable input into the essence of their existencewater. In a sense, this case adversely decides the rights of South Dakota citizens to meaningfully participate and to be heard on a project of momentous consequence, a project conceived in collaboration by their state government and a private corporation. *128 From North Dakota to Nebraska, from Wyoming to Minnesota and Iowa, the people of South Dakota have a right to be meaningfully heard. This has been stripped from them by administrative pronouncement. Furthermore, under the settled law of this state, appellants are aggrieved persons with standing. It need only be shown that they have suffered the "denial of some claim of right either of person or property...." Keogan v. Bergh, 348 N.W.2d 462, 464 (S.D.1984); Application of Northern States Power Co., 328 N.W.2d 852 (S.D.1983); Barnum v. Ewing, 53 S.D. 47, 220 N.W. 135 (1928).
Let us review the law and the facts to determine if, in addition to lack of due process because of a violation of fair play, there was defective notice given by the Water Resources Board.
"As a general rule, where a method of giving notice is prescribed by statute, there must be strict compliance with the prescribed method in [the] form of notice." Hein v. Marts, 295 N.W.2d 167, 170 (S.D. 1980), citing Smith v. D.R.G., Inc., 30 Ill. App.3d 162, 331 N.E.2d 614 (1975); Cowl v. Wentz, 107 N.W.2d 697 (N.D.1961); In re Sioux City Stock Yards Co., 222 Iowa 323, 268 N.W. 18 (1936). Hein involved an administrative agency, water rights, and property rights. Therein, we further expressed, 295 N.W.2d at 170, "Moreover, these cases emphasize that there must be strict compliance with notice provisions where the notice affects property rights or where it is to form the basis for a suit."
SDCL 46-5-17 sets forth the notice requirements for water rights applications. These applications must include:
[A]ll essential facts as to the proposed appropriation, including the places of appropriations and of use amount of water, the purpose for which it is to be used, name and address of the applicant and the time and place when the application will be taken up by the board for consideration. (Emphasis supplied mine.)
The notice in question provided that "said water to be used for the purpose of energy industry used in the Powder River Basin, Wyoming." However, at the hearing on January 5, 1982, evidence and argument was advanced by the State and ETSI that communities in western South Dakota would be availed high-quality water from the ETSI pipeline for domestic and livestock watering uses. There can be no doubt, when one considers the transcript of the Water Management Board hearings, that considerable importance was placed upon the delivery of a large amount of the entire project's water to west river communities. This Board made findings that the project was "in the public interest" and that there "was a beneficial use of water." These critical findings were mandatory under SDCL 46-1-4 and SDCL 46-5-18. Thus, the notice was deficient in failing to inform the people of South Dakota of the places and purposes for the water proposed to be appropriated. Perhaps this was a new, great, and innovative plan. But the point is, the people should have been apprised, in advance of the meeting, so that they could have input into the decision-making process. Again, a hearing must be held in a meaningful manner. Had the notice included this proposed beneficial use, citizens could have prepared themselves on the feasibility, costs, and justifications of the water appropriation. Rather, the proponents were well prepared and the general public was ill prepared on a new issue sprung upon them at the hearing. Simply put, the proposed in-state uses were not included in the notice as required. This omission denied appellants, and other state citizens, the right to prepare themselves to meet the "feasibility" of each proposed point of use in the various communities.
The Board was required, in granting or refusing the water permit, to make four determinations: beneficial use, availability of unappropriated water, feasibility, and public interest. See SDCL §§ 46-1-8, 46-1-6(6), 46-5-20, 46-5-21, 46-5-11, 46-5-18, and 46-5-5 (46-5-18, 46-5-20 and 46-5-21 were repealed in 1983 and 46-5-5 and 46-5-11 were amended since the hearing). Feasibility had to be considered and, without notice of in-state use, the Board could *129 only consider one side of the story. That is not the way we do things in America.
I would reverse the trial court and require the trial court to remand this case for further proceedings, i.e., a hearing before the Water Resources Board which would avail due process. This is not because of any "clearly erroneous" rule. SDCL 1-26-36 empowers a reviewing court to "remand the case for further proceedings" if there has been substantial rights prejudiced because of administrative findings which are (1) in violation of constitutional or statutory provisions or (2) made upon unlawful procedure. I find that both exist before this Board.
NOTES
[1] This act was passed during the second special session of the 1981 South Dakota Legislature. The text of the act is found at 1982 S.D.Sess. Laws, ch. 1 at p. 4-10.
[2] SDCL 46-5-17, later repealed by 1983 S.D. Sess.Laws, ch. 316, § 7.
[3] SDCL 34A-9-4 provides in pertinent part: "All agencies may prepare, or have prepared by contract, an environmental impact statement on any major action they propose or approve which may have a significant effect on the environment...." (Emphasis added.)
[1] In several places in the State's brief, it is strongly advocated that this was an adversary proceeding and "those who wished to intervene should let the Board know ... so that they could cross-examine the witnesses and those who did not wish to intervene would not have the right to cross-examine witnesses."
[2] An exhaustive Federal Environmental Impact Study was submitted by ETSI into evidence "to show the feasibility of the project" in ETSI's own words. Per SDCL 34A-9-11, a state environmental impact study is not necessary if a federal impact study is required and has been completed. However, the federal impact statement in Volume 1, p. 1-61, reflects that a South Dakota environmental analysis would have to be completed for the South Dakota route. It was not done.
[3] SDCL 1-26-18 of the South Dakota Administrative Procedures Act provides for the right to present evidence, a reasonable opportunity to inspect documentary evidence, and issue subpoenas in contested cases.
[4] SDCL 1-26-19.2 of the South Dakota Administrative Procedures Act provides for depositions and discovery.
[5] In 1983, the United States Congress refused to approve a bill granting coal slurry pipelines, a federal right of eminent domain. See H.R. 1010, 98th Cong., 2d Sess. (1983). This has cast a pall on the entire project and suspension of payments on the contract in question. I do not suggest that the legal issues of this appeal are moot.
[6] I make this point not to quarrel with the feasibility of the pipeline. Feasibility thereof is not an appellate function. However, the effect upon land by water appropriated does bear directly on due process.