Howard M. ERICKSON, Claimant
and Appellee,

v.

MINNESOTA GAS CO. and Royal
Insurance Co., Employer and
Insurer and Appellants.

No. 14330.

Supreme Court of South Dakota.

Argued April 16, 1984.

Decided Nov. 28, 1984.

William Fuller of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for claimant and appellee.

Michael L. Luce of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for employer and insurer and appellants.

McMURCHIE, Circuit Judge.

Procedurally, the case commenced in the Department of Labor. The issue presented to the department involved whether claimant's injury arose out of and in the course of his employment. After hearing, findings of fact and conclusions of law were entered for claimant. Appeal was filed in circuit court, which affirmed the department's decision, and employer and insurer appeal therefrom. We affirm.

Claimant, Howard M. Erickson, was employed by the Minnesota Gas Company as a heavy equipment operator. On the day in question, Erickson operated a Ditch Witch trencher. The exhaust stack was approximately one foot from the operator, and the end of the stack was corroded off. On the day the alleged injury occurred, the trencher was placed in such a position that the wind blew the exhaust over Erickson, who testified that he could smell the exhaust. Erickson testified that at noon he did not feel well and had lost his appetite. Following the noon break, he noted that he had an upset stomach and headache for the balance of the day. After work, he took aspirin and went directly home, where he met his daughter-in-law, who is a registered nurse working in an intensive care unit. She testified that when she met her father-in-law upon his arrival at home, he did not recognize her. Erickson did not know her name, asked her what her name was, had a ruddy complexion, his eyes had "kind of a

hazy look," he looked really lethargic, and he did not have any real focus in his eyes. She further stated, "He just looked very blank to me."

Erickson's wife stated that he did not recognize his daughter-in-law, that he seemed to want to steady himself, seemed to be weighed down, had a funny look about him, did not eat dinner, had not been drinking, and simply sat down and dropped off to sleep upon entering the home after work.

At 11:00 that evening, after having gone to bed, Erickson awakened and made an emergency trip to the hospital to obtain medical care for his son. He continued to feel nauseous and weak, although he did not seek medical assistance at this time. Upon returning one hour later, he went to bed and awakened at approximately 4:00 a.m. He felt ill, and upon sitting down on the toilet, he passed out, fell to the floor and sustained a cerebral concussion and a compression injury to his spinal cord. His son found him lying on the floor, unable to speak and able to move only the index finger on both hands. Erickson was taken by ambulance to the emergency room of the hospital.

After initial examination, Erickson was hospitalized. The doctor's first diagnosis was that Erickson suffered from hypokalemia, for which he was treated, as well as for the injuries caused by the fall. Various diagnostic tests were performed at the direction of Erickson's doctor, including a carboxyhemoglobin test, which revealed an abnormally high carbon monoxide level of nine percent.

The treating doctor, who had been the Erickson family physician for some twenty years, subsequently diagnosed that Erickson suffered from carbon monoxide poisoning. In an attempt to determine the source of the poisoning, the Erickson residence, family, and automobiles were tested. No potential source of carbon monoxide, except cigarettes, was documented throughout the tests. The only apparent exposure came from Erickson's operation of the trencher.

The treating doctor testified at the time of hearing as to the early symptoms of carbon monoxide poisoning, all of which were consistent with the lay witnesses' testimony concerning observations of Erickson. The doctor's opinion as to the cause of Erickson's loss of consciousness and subsequent fall, after reviewing all of the facts available, was that Erickson had a high level of carbon monoxide poisoning; that one of the subsequent effects to the central nervous system was the development of a cerebral edema, which impaired blood circulation to the brain; that this, in turn, caused the black-out, subsequent fall and the injuries diagnosed as a cerebral concussion and compression injury to Erickson's spinal cord.

The treating doctor consulted with a qualified doctor of pharmacy who was acting as a consultant in toxicology to the hospital medical staff and the poison control center. The doctor of pharmacy supported the treating doctor's opinion.

From this point on, it became the battle of the experts. Appellants produced two qualified doctors who testified that in their opinion Erickson had not suffered from carbon monoxide poisoning as a result of his operation of the trencher. They further testified that in all probability Erickson's black-out and fall were caused by other medical difficulties, none of which have a causal connection between his employment and the disability.

In affirming the department's decision, the circuit court stated in its memorandum opinion:

> Under the evidence of the instant action, were I permitted to substitute my judgment for that of the Division of Labor and Management, I would have found that the Claimant had failed to establish a "reasonable connection" between his employment and his injury.

> However, there is expert and lay testimony, which, if believed, could establish such a "reasonable connection." Thus, giving great weight to the findings made on questions of fact, this Court is unable

to say that the decision of the Division of Labor and Management was clearly erroneous in light of the entire evidence in the record....

The circuit court in its order affirmed the department and held that "the findings and conclusions of the Division of Labor & Management were permissible and not clearly erroneous in light of the entire evidence of record ...."

SDCL 1-26-37 as amended in 1983 provides in part: "The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo." In *State Division of Human Rights v. Miller,* 349 N.W.2d 42 (S.D.1984), we held that our scope of review under this statute as amended requires us to review the administrative agency's decision in essentially the same manner as did the circuit court. *See also Matter of S.D. Water Management Board,* 351 N.W.2d 119 (S.D.1984).

In reviewing the actions of an agency, we are to give great weight to the findings made on questions of fact and may reverse only if the findings are clearly erroneous in light of the entire evidence in the record. SDCL 1-26-36.* *Kirnan v. Dakota Midland Hospital,* 331 N.W.2d 72 (S.D.1983), and *Barkdull v. Homestake Mining Co.,* 317 N.W.2d 417 (S.D.1982).

■ As this court stated in *Estate of Hobelsberger,* 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970), and restated in *Matter of Johnson,* 337 N.W.2d 442, 446 (S.D.1983):

In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo. The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed.

The deputy director, acting as the finder of fact, had the opportunity to observe and listen to each of the lay witnesses' testimony and to determine their credibility. The expert medical testimony herein was presented by deposition. The trier of fact is permitted to determine the questions of fact and to choose one opinion over that of another when that opinion is properly supported by the evidence.

■ The circuit court in its review of the evidence chose not to and did not substitute its judgment for that of the agency as to the weight of the evidence and the questions of fact. The circuit court, in affirming the findings of fact and conclusions of law and order of the agency in their totality, rejected appellants' argument as raised under SDCL 1-26-36(1), (4), and (5). Appellants' total argument appears to be centered around the testimony of their two medical experts, neither of whom observed or treated Erickson. Each of the appellants' medical experts emphatically testified that Erickson's fall was not caused by carbon monoxide exposure at work. The opinion of one of appellants' experts was that it was medically impossible for this to have occurred. It is interesting to note that appellants' experts were unable to determine with certainty the cause of Erickson's loss of consciousness. It was the opinion of one of the medical experts that the most likely cause of Erickson's loss of consciousness was hypokalemia. Appellants' forensic pathologist testified that

* SDCL 1-26-36 provides:

The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;
....
(4) Affected by other error of law;
(5) Clearly erroneous in light of the entire evidence in the record;
....
    A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment....

there is no medical explanation for the nine percent carboxyhemoglobin test result.

Appellants' argument goes to the credibility of the witnesses and the competency of the evidence relied upon by Erickson to meet his burden of establishing a causal connection between his employment and the disability.

We can find no violation of the statutory provisions or errors of law materially affecting the department's decision. The trier of fact found sufficient evidence to support Erickson's burden of proof, and after viewing the totality of the record, we are not left with a definite and firm conviction that a mistake has been made. The circuit court's decision to affirm in total the findings and conclusions of the Division of Labor and Management was not clearly erroneous.

The order appealed from is affirmed.

WOLLMAN and HENDERSON, JJ., DUNN, Retired Justice, and RIES, Circuit Judge, concur.

McMURCHIE, Circuit Judge, sitting for MORGAN, J., disqualified.

RIES, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

DUNN, Retired Justice, participating.

WUEST, Circuit Judge, Acting as Supreme Court Justice, not participating.