Sherry **ANDERSON**, Claimant
and Appellant,

v.

**WESTERN DAKOTA INSURORS,**
Employer and Appellee.

No. 15171.

Supreme Court of South Dakota.

Sept. 10, 1986.

Michael M. Hickey, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for claimant and appellant.

Drew Johnson, South Dakota Dept. of Labor, Unemployment Ins. Div., for employer and appellee.

SABERS, Justice.

This is an appeal arising out of a claim for unemployment insurance benefits. The circuit court affirmed the decision of the Secretary of the Department of Labor (Secretary) upholding an appeal referee's determination that claimant was overpaid unemployment insurance benefits. Claimant appeals and we affirm.

*Statement of Facts*

Appellant Sherry Anderson (Anderson) was employed by the McKinney-Wudel Insurance Agency (McKinney) from March 1981, until it was sold in June of 1984. Anderson's employment at McKinney terminated on June 15, 1984, when the new owners took over. As of that time, she was making $5.50 per hour as a bookkeeper. Anderson, a divorcee with two children, was also supplementing her income during this period by working as a cocktail waitress.

On June 19, 1984, Anderson filed a claim with the South Dakota Department of Labor, Unemployment Insurance Division (Department) for benefits. She received numerous pamphlets setting forth the Department's rules, laws, and policies concerning eligibility to collect unemployment insurance benefits (benefits) and maintaining such eligibility. Anderson also received a written policy statement about job contacts. She was required to make two in-person job contacts per week verified by "Work Search Verification Cards" (cards) which were supplied by the Department. Anderson signed the Department's "Work Search Verification Policy" which states that the cards must be signed by the hiring official or representative of each employer contacted. This policy further states: "If you cannot produce the signed Work Search Verification Cards as proof of your work search in any week(s), you will be held ineligible for benefits for that week(s) and possibly for subsequent weeks."

It is undisputed that Anderson understood all of this information because she passed a written quiz in regard to it. She also discussed the various policies with a claims taker on July 19, 1984. She was also directed by Job Services to apply for

work and to accept any suitable work offer unless there was good cause for refusal.

Just prior to leaving McKinney, Anderson learned about a job opening with Western Dakota Insurors (Western). Shortly thereafter, she spoke with Western's owner/manager Gary Larson (Larson) about this prospect. Larson told her that the job would be part-time during the training session and full-time by September 1 or 15. Anderson informed him that she needed full-time employment.

At the end of June 1984, Anderson spoke with Larson about the job again. He indicated that there would certainly be a job opening but he was unsure about when the job would become full-time. Although Larson did not quote a dollar figure, he stated that the salary would "probably come close" to what Anderson had been making in the past.

Anderson then heard about another job. According to her testimony, the job was to start in July of 1984, with a salary of $16,000 per annum. Anderson stated that she was recommended for this job, submitted a resume in response thereto, and called about it several times. According to the Department, a card was not submitted by Anderson concerning this employer contact. This job never materialized.

In the meantime, Larson called Anderson with a formal offer to work for Western. He told her to think about it for a few days and then get back in touch with him. Failing to hear from Anderson, Larson called her again to find out if she was going to accept the offer. Anderson then informed Larson that she was waiting for a better paying job. Thereafter, Western hired a third person who started work on August 15, 1984, at $5.63 per hour for a forty-hour week.

Anderson continued to receive benefits until October 30, 1984. An investigation of Anderson's job contacts was commenced by the Department in September of 1984. The Department's investigator, Dana Peep, de-termined that some of the cards submitted by Anderson were not signed by the employers, but that their names were forged. Anderson admitted forging the signatures and signed a written statement to that effect. She stated, however, that she personally made each job contact even though she signed the cards herself. Some employers indicated that they had talked to her but had not signed the cards, and others [1] said that she did not contact them at all. In addition, none of the weekly claim cards turned in by Anderson from June 23 to September 15, 1984, indicated that she had refused the position at Western.

On October 30, 1984, the Department found that Anderson had refused an offer of suitable work without good cause and had failed to make an active search for employment which rendered her ineligible for benefits. The Department further determined that Anderson had been overpaid in the amount of $1,404, and assessed an administrative penalty against her for that amount.

The Appeal Referee (referee), affirmed the Department's conclusion that Anderson had made job contacts and failed to obtain the appropriate signatures on the cards. The referee further found that Anderson had misrepresented facts to secure or increase benefits by wrongfully signing the employers' signatures on the cards. Secretary and the circuit court affirmed the referee's decision and Anderson appeals to this court.

*Issues*

The issues are whether the trial court erred in finding that Anderson: 1) failed to make an adequate work search, 2) refused suitable work without good cause, 3) misrepresented information to secure or increase benefits, and 4) was overpaid benefits.

*Scope of Administrative Review*

Under SDCL 1–26–37 as amended, this court makes the same review of the admin-

---

1. The employers were: Davies Development, Hart Ranch, Rapid City Chamber of Commerce, and Lewis & Kirkeby Real Estate.

istrative agency's decision as the circuit court, unaided by any presumption that the circuit court's decision was correct. *State Div. of Human Rights v. Miller,* 349 N.W.2d 42, 46 n. 2 (S.D.1984); *Raml v. Jenkins Methodist Home,* 381 N.W.2d 241, 242–243 (S.D.1986); *Application of Northwestern Bell Tel. Co.,* 382 N.W.2d 413, 415–416 (S.D.1986). We do not substitute our judgment for that of the agency as to the weight of evidence on questions of fact unless the agency's decision is clearly erroneous, or is arbitrary, capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Id.*

In this case, the Department had the burden of proving that Anderson was ineligible for benefits. *Zeig v. S.D. Dept. of Lab., Unemployment Ins.,* 337 N.W.2d 435, 437 (S.D.1983). SDCL 61–6–15 [2] states that when an unemployed individual fails, without good cause, to apply for suitable work or accept suitable work when offered, the Department shall deny benefits. The trial court found that Department met its prima facie burden by introducing the forged Work Search Verification Cards and through evidence of Larson's job offer which Anderson refused. The trial court held that Anderson failed to rebut this evidence. We agree.

### Discussion

In determining whether a job is suitable for a particular person, the department considers the criteria set forth in SDCL 61–6–16.[3] Although our statute does not define "good cause" for failure to apply for a job or failure to accept a job offer, we elected to follow the Pennsylvania approach in *Matter of Unemployment Appeal of Fickbohm,* 323 N.W.2d 133 (S.D. 1982). Good cause:

... must be deduced from the facts of each case ... and may cover reasons which are extraneous to the employment and strictly personal to the claimant, provided, however, such personal reasons involve real and substantial circumstances which compel the decision to refuse suitable work and rest on 'good faith.' '[G]ood faith, as used in this context, includes positive conduct on the part of the claimant which is consistent with the genuine desire to work and be self-supporting.'

*Id.* at 135, quoting *Trexler v. Com., Unemployment Comp. Bd.,* 27 Pa.C. 180, 365 A.2d 1341, 1344 (1976) (citations omitted).

In Anderson's case, the record shows that she had been employed as a bookkeeper for approximately four years at McKinney in Rapid City, where she resided. At the time she was released, Anderson was working on a full-time basis at an ending pay rate of $5.50 per hour. The job she refused at Western was also a bookkeeping position, located in Rapid City, and which started at an hourly rate of $5.63. Anderson claimed that she refused this position because she needed full-time employment and because she had applied for a better paying job. However, even though the Western job would have started out part-time, it was to become full-time no later than September 15. Moreover, the evidence indicates that when the position was eventually filled on August 15, 1984, it was full-time.

The trial court found that when Larson called Anderson with the job offer, he did not describe in detail the precise salary or hours. Rather, he asked her to think about the offer and get back to him. We

---

2. SDCL 61–6–15 provides in part:

> If the department finds that an unemployed individual has failed, without good cause, either to apply for available suitable work when so directed by the employment office or the department or to accept suitable work when offered him, or to return to his customary self-employment, if any, when so directed by the department, such claimant shall be denied benefits ...

3. SDCL 61–6–16 provides:

> In determining whether or not any work is suitable for an individual, the department shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

find that at this point, Anderson knew from her previous conversation with Larson that the salary was comparable to what she had been earning, and that the job would eventually become full-time. Since the "better paying job" never materialized, we find that it was incumbent upon Anderson to follow-up Larson's sure offer in order to demonstrate "positive conduct ... consistent with the genuine desire to work[.]" *Fickbohm*, 323 N.W.2d at 135. Under this record and the *Fickbohm* definition of "good cause," we affirm the trial court's conclusion that Anderson refused a valid job offer without good cause.

█ The trial court further found that Anderson failed to make a valid search for employment as evidenced by the forged cards. Anderson admitted to forging the various employers' names but claimed that she personally made each job contact. Anderson was familiar with the Department's rules and regulations, particularly those concerning the Work Search Verification Policy. Her rationale for intentionally forging the signatures, i.e., embarrassment, memory loss, and inconvenience, was unpersuasive. In *Matter of Vick*, 12 A.D.2d 120, 208 N.Y.S.2d 788, 790 (1960), the court held that when a claimant knowingly and intentionally made a wrong mark on an unemployment insurance form, it constituted a false statement as a matter of law. *See also: Randazzo v. Catherwood*, 29 A.D.2d 900, 287 N.Y.S.2d 936, 937 (1968). We affirm the conclusion that Anderson failed to make an adequate work search.

█ SDCL 61-6-22[4] requires the Department to deny benefits to anyone who has willfully misrepresented any fact to

secure benefits. Furthermore, the Department is required to hold a claimant liable for any overpayment of benefits obtained through the nondisclosure or misrepresentation of a material fact. SDCL 61-6-23.[5] Here, some of the employers told the department that Anderson never contacted them at all, and that the signatures which appeared on the cards were not theirs. This clearly supports the conclusion that Anderson misrepresented a material fact, i.e., that she made certain job contacts. Therefore, we hold that the Department is required to hold Anderson liable for the overpayments in accordance with SDCL §§ 61-6-22 and 61-6-23.

We have considered Anderson's remaining arguments and find them to be without merit. The decision below was not clearly erroneous, but based squarely upon the entire evidence in the record. Accordingly, we affirm the trial court in all respects.

WUEST, C.J., and MORGAN, and FOSHEIM, JJ., concur.

HENDERSON, J., specially concurs.

HENDERSON, Justice (specially concurring).

Not desiring to moor myself to sentence-structure or conceptual misinterpretation in the future; believing, also, that the majority writing might possibly unsettle the settled and muddy our oft-announced administrative scope of review, I respectfully specially concur.

In administrative cases where the circuit court merely reviews the agency record and takes no new evidence, our scope of review is clear.

4. SDCL 61-6-22 provides:
Any individual who has willfully or fraudulently misrepresented any fact to secure or increase benefits under this title shall be denied benefits for not less than one week and not to exceed fifty-two weeks from and after the date such misrepresentation or fraudulent act is discovered.

5. SDCL 61-6-23 provides in part:
Any person who, by reason of the nondisclosure or misrepresentation by him or by

another of a material fact (irrespective of whether such nondisclosure or misrepresentation was known or fraudulent) ... has received any sum as benefits ... while any conditions for the receipt of benefits ... were not fulfilled ... shall, ... either be held liable to have such sum deducted from any future benefits ... or shall be liable to repay the department, as the department may elect, a sum equal to the amount so received ...

[O]ur review is of the decision of the administrative agency and our standard is the clearly erroneous standard. If the circuit court reversed the agency's decision, and "[i]f after review of the evidence we deem the agency findings clearly erroneous, we affirm the circuit court. If the agency findings are not clearly erroneous, then the circuit court was clearly erroneous in so concluding." *State, Div. of Human Rights v. Miller*, 349 N.W.2d 42, 46 n. 2 (S.D.1984).

*Kienast v. Sioux Valley Co-op*, 371 N.W.2d 337, 339 (S.D.1985).

Likewise, if the circuit court affirmed the agency's decision, and if after review of the evidence we deem the agency findings clearly erroneous, we reverse the circuit court. If the agency findings are not clearly erroneous, then the circuit court was not clearly erroneous in so concluding. *See Application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413, 415–16 (S.D.1986); *South Dakota Wildlife Federation v. Water Management Bd.*, 382 N.W.2d 26, 29–30 (S.D.1986); *Stavig v. South Dakota Highway Patrol*, 371 N.W.2d 166, 168 (S.D. 1985); *Erickson v. Minnesota Gas Co.*, 358 N.W.2d 526, 528 (S.D.1984); and *Matter of South Dakota Water Management Bd.*, 351 N.W.2d 119, 122 (S.D.1984).

Lastly, there is a different rule on evidence if submitted by deposition. *See Clark & Son v. Nold*, 85 S.D. 468, 474, 185 N.W.2d 677, 680 (1971). Obviously, where a deponent has not appeared before a lower court when testifying, the members of this Court can review a deponent's testimony as though it were presented to us initially. In such latter instance, the clearly erroneous rule as specified in SDCL 15–6–52(a) is inapplicable.